UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
ANNE BRYANT, ELLEN BERNFELD,
and GLORYVISION, LTD.,                          Doc. No. 07-Civ-3050 (CLB)

                                    Plaintiffs,

    -against-


EUROPADISK, LTD., MEDIA RIGHT
PRODUCTIONS, INC., VERY COOL MEDIA,
INC., DOUGLAS MAXWELL, THE ORCHARD
ENTERPRISES, INC. and RUSSELL J.
PALLADINO,
                                    Defendants.
---------------------------------------X


---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PARTIAL
MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY ONLY**

---


                              Monaghan, Monaghan, Lamb
                              & Marchisio, LLP

                              401 East 65th Street, Ste. 10C
                              New York, New York 10019
                              (212) 541-6980
                                         &
                              28 West Grand Avenue
                              Montvale, New Jersey 07645
                              Tel. (201) 802-9060
                              Fax. (201) 802-9066

Patrick J. Monaghan, Jr.
Michael Korik

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .........................................................................................1

BACKGROUND FACTS ................................................................................................2

The Media Right Product Representation Agreement Did Not Allow Defendants To Make And Distribute Unauthorized Physical Or Digital Copies Of Plaintiffs' Copyrighted Recordings ...........................................................................................4

Media Right / The Orchard Agreement ....................................................7

Plaintiffs Discover The Infringement ..................................................8

STANDARD OF REVIEW ...........................................................................................10

ARGUMENT ...............................................................................................................12

Defendants Infringed Upon Plaintiffs' Copyrights ...................12

COPYRIGHT GENERALLY ........................................................................................12

Copyright Infringement Generally..........................................................12

The Infringement Was Willful Infringement ....................................17

TRADEMARK INFRINGEMENT AND TRADE DRESS INFRINGEMENT.............19

CONCLUSION ..........................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48
   (1986) ...........................................................................11

Celotex Corp. v. Catrett, 477 U.S. 317, 322023 (1986) .....11, 12

Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340,
   361 (2001). ....................................................................13

France Stone Co. v. Charter Township of Monroe, 790 F.Supp
   707, 710 (E.D. Mich. 1992)(...........................................11, 12

GMA Accessories, Inc. v. Olivia Miller, Inc., 139 Fed.
   Appx. 301, 303 (2d Cir. 2005) ............................................18

Island Software & Computer Serv. v. Microsoft Corp. 413
   F.3d 257, 264 (2d Cir. 2005) .............................................18

Micro Star v. Formgen Inc. 154 F.3d 1107, 1110 (9th
   Cir.1998) ..................................................................1

Peer Int'l Corp. v. Pausa Records, Inc. 909 F.2d 1332, 1336
   (9th Cir. 1990) ...........................................................18

Rivera v. United States, 2007 US Dist. LEXIS 30960, at *7
   (W.D. Tex. 2007) ..........................................................12

**Statutes**

17 U.S.C. §410(c) ...........................................................1, 13
17 U.S.C. 106 (2006). ..........................................................12
17 U.S.C. 501(a). ..............................................................17

**Rules**

Fed. R. Civ. P. 56 ..........................................................10, 12

**Treatises**

4 M. & D. Nimmer, NIMMER ON COPYRIGHT §13.01, at 13-5 & n.4
   (2002) .................................................................13, 17

### PRELIMINARY STATEMENT

Plaintiffs are, and at all relevant times have been, the copyright owners of each of the Sound Recordings listed above. Plaintiffs properly registered their copyrights in these Sound Recordings before the date that Defendants were found distributing unauthorized digital copies of the recordings through the Internet. Registration of the copyrights by Plaintiffs creates a presumption of ownership of these copyrights. Micro Star v. Formgen Inc. 154 F.3d 1107, 1110 (9th Cir.1998); 17 U.S.C. §410(c). Plaintiffs at no time granted Defendants any authorization to copy or distribute digital copies of Plaintiffs' copyrighted sound recordings. Defendants' own statements and records demonstrate that unauthorized digital copies of Plaintiff's intellectual property were distributed by Defendants clear cut infringement and there remain no material issues of fact with respect to Plaintiffs' ownership of the copyrighted Sound Recordings, proper registration of the Sound Recordings (publicly available via access to http://www.copyright.gov with copies annexed to the Bryant Declaration as Exhibit "C") or whether Defendants ever received any authorization from Plaintiffs to copy or distribute digital copies of Plaintiffs' Sound Recordings.

1

Plaintiffs respectfully submit that there are no issues of material fact with respect to Plaintiffs' ownership of the copyrighted sound recordings, associated artwork and text, proper registration of the sound recordings, associated artwork and text, and the fact that Defendants never received any authorization to copy or distribute unauthorized copies of Plaintiffs' sound recordings, associated artwork and text. In this motion, Plaintiffs request an order finding that no genuine issue of material fact remains regarding Plaintiffs' ownership of the copyrighted sound recordings, associated artwork and text, Plaintiffs' registration of the sound recordings, associated artwork and text and the lack of authorization for Defendant's copying and distribution of Plaintiffs' sound recordings, associated artwork and text.

## BACKGROUND FACTS

Plaintiffs, Anne Bryant and Ellen Bernfeld, both accomplished musicians and songwriters and their record label, Gloryvision, Ltd. created, produced and marketed two successful niche musical products titled Songs For Dogs and Songs For Cats in approximately 1995-1997. *See* Declarations of Anne Bryant at ¶6-7 and Ellen Bernfeld at ¶5-6. The products were sold and distributed by the Plaintiffs on

2

both compact disc and audiocassette and were also made available with a beautiful full color storybook. *See* Declarations of Anne Bryant at ¶50 and Ellen Bernfeld at ¶38. Included amongst the copyrighted musical compositions were the following tracks:

    a.   *The No Song;*
    b.   *If I Only Had a Thumb;*
    c.   *I Stole The Christmas Pie;*
    d.   *Please Don't Forget My Birthday;*
    e.   *The Very First Dog;*
    f.   *Do The Doggie Salsa;*
    g.   *I Been Cryin' All Night Since You're Gone;*
    h.   *Follow The Bone Lady;*
    i.   *Tomorrow's Another Day;*
    j.   *Could You Be An Angel?;*
    k.   *I'm Sweetie The Gourmet;*
    l.   *Curious x9;*
    m.   *Oh, My Little Sushi;*
    n.   *The Scat Cat;*
    o.   *Watchin' Purry Mason;*
    p.   *I Pray For The World (A Christmas Prayer);*
    q.   *Allergic To You;*
    r.   *Catrina, The Ballerina;*
    s.   *Where Will I Sleep Tonight;* and
    t.   *I'm Purrfect.*

*See* Declaration of Bryant Declaration at ¶9.

The products were sold by Plaintiffs through the internet website, Amazon.com (as a physical product) as well as retail stores, specialty catalogs, and by direct mailorder. *See* Deposition of Anne Bryant at pages 21-26 and the Declaration of Anne Bryant at ¶27. Sales of the products were a great success, having sold thousands of copies without any assistance from any outside

distributors, and Plaintiffs received positive reviews and great acclaim for their products. *See* Deposition Transcript of Anne Bryant at page 21:19 – 22:17.

During this time, neither Songs for Cats or Songs for Dogs was sold or otherwise distributed in an electronic form made available for download. *See* Declarations of Anne Bryant at ¶41 and Ellen Bernfeld at ¶39. Moreover, it was never Plaintiffs' intent to sell or distribute any of the recordings from Songs for Cats or Songs for Dogs in any electronic/digital form. *Id*.

**The Media Right Product Representation Agreement Did Not Allow Defendants To Make And Distribute Unauthorized Physical Or Digital Copies Of Plaintiffs' Copyrighted Recordings**

On February 24, 2000, Gloryvision entered into a 36 month agreement with Defendant Media Right Productions, Inc. ("Media Right") where Media Right was granted the authority to act as agent and representative, on a non-exclusive basis to market the CDs and tapes described above. *See* Exhibit "A" annexed to the Bryant Declaration. The agreement *did not* convey any intellectual property to Media Right. *See* Exhibit "A" annexed to the Bryant Declaration and the Declarations of Anne Bryant at ¶39 and Ellen Bernfeld at ¶37. The agreement did not convey any

4

right to manufacture or make copies (physical or digital) of any of the copyrighted recordings contained within the tangible compact discs and cassettes. *See* Exhibit "A" annexed to the Bryant Declaration.

As part of the agreement, Media Right was to use its best efforts to market and promote these recordings to catalogs, shopping networks, internet sites[1], retailers and wholesalers in exchange for twenty percent of all gross sales under the agreement. *See* Exhibit "A" annexed to the Bryant Declaration. In accordance with the agreement, Media Right was to also notify Gloryvision in writing regarding all orders. *See id.* Under the agreement, Gloryvision was to maintain stock of the products and to ship the products to a specified vendor upon notification from Media Right. *See id.*

With respect to payment, Media Right productions was responsible for the collection of funds and was to pay Gloryvision its specified share within seven days of Media Right's receipt of payment. *See id.* Furthermore, Media Right was to supply Gloryvision with a monthly report of marketing and promotion activities done on its behalf. *See* Exhibit "A" annexed to the Monaghan Declaration.

---

[1] At the time of this agreement, the intention of the parties as to "internet sites" was with respect to sales of physical copies of the compact discs and cassettes to online retailers such as amazon.com, cdnow.com, musicblvd.com, etc. In February 2000, there were no legal online download sites such as iTunes.

Most importantly, the agreement also acknowledged that Gloryvision was (and remains) the owner of all copyrights and rights pursuant to these recordings. *See* Exhibit "A" annexed to the Bryant Declaration.

According to the terms of the agreement, drafted by Media Right, the agreement to sell physical compact discs and tapes provided by Plaintiffs' to Media Right expired in 2003. Media Right never performed under the contract pursuant to the terms and breached the agreement from day one. There was never an implied-in-fact contract between Media Right and Gloryvision. The business conduct of the parties demonstrated that the there was no agreement in effect between Gloryvision and Media Right to sell physical copies as of February 2003 and *never* an agreement between Media Right and Gloryvision to authorize digital copies to be made and distributed by The Orchard.

Specifically, for the duration of the agreement and five years after, Plaintiffs did not receive a single invoice, statement, check, letter, telephone call or any other notice from Defendants regarding the sales or distribution of their products. *See* Bryant Declaration at ¶25; see also Bernfeld Declaration at ¶23. From day one, Media Right breached the terms of the agreement by failing to account and provide payment to Plaintiff. *Id.* Media

6

Right also authorized digital copies to be made and sold through Defendant The Orchard via numerous online download services for profit on February 1, 2000, twenty three (23) days before the Media Right / Gloryvision agreement went into effect. *See* Exhibit "A" annexed to Monaghan Declaration and Exhibit "A" annexed to the Bryant Declaration.

## Media Right / The Orchard Agreement

Media Right entered into an agreement with The Orchard on or about February 1, 2000[2]. *See* Exhibit "A" annexed to the Monaghan Declaration. The Orchard, amongst other things, is a distributor of both physical and digital media on the Internet and sells products direct through its e-store and supplies other third parties, such as iTunes, eMusic, Rhapsody and MSN Music with digital content for resale.

The February 1, 2000 agreement between Media Right and The Orchard granted non-exclusive rights to The Orchard to "…sell, distribute, and otherwise exploit any and all of your Records by any and all means and media (whether now known or existing in the future), including without limitation, the non-exclusive right to sell, distribute and

---

[2] The Gloryvision / Media Right agreement was not in effect until February 24, 2000, 23 days before the Media Right / The Orchard agreement regarding Songs For Dogs / Songs For Cats.

otherwise exploit any and all of your Records throughout E-Stores including but not limited to, those via the Internet, as well as all digital storage, download and transmission rights, whether now known or existing in the future." *See* Exhibit "A" annexed to the Monaghan Declaration.

In addition, and perhaps most importantly, Media Right "…warrant[ed] and represent[ed] that [Media Right] ha[d] the right to grant [The Orchard] (and any person or company named by [The Orchard]) the rights, contained [in the agreement]…" Given the limitations of the Media Right and Gloryvision agreement effective February 24, 2000, Media Right was aware that it did not have any other rights than those described in the agreement.[3] As Media Right was aware that it did *not* have any of the rights that it granted to The Orchard on or about February 1, 2000, as discussed below, Media Right *willfully* infringed upon exclusive rights granted to Gloryvision by the Copyright Act.

## Plaintiffs Discover The Infringement

In the Summer of 2006, while browsing Amazon.com, Plaintiffs discovered that Amazon.com was selling products titled Songs for Cats and Songs For Dogs with Media Right

---

[3] Media Right drafted the language of the 1999 agreement and as such was aware of its terms and obligations.

8

Productions listed as the artist. *See* Exhibits "C" and "D" annexed to the Bryant Declaration. In addition, the label was listed as "The Orchard" and the products were dated March 20, 2000. See *id*.

Upon further inquiry and investigation, Plaintiffs learned that their compact discs were being sold not only on Amazon.com but all over the internet as digital copies sold through numerous digital download retailers such as iTunes, eMusic, Rhapsody, Napster, MSN Music and countless others. *See* Bryant Declaration at ¶30 and Bernfeld Declaration at ¶28. Not only were Plaintiffs alarmed to learned that their products were offered for sale in a digital format, they also learned that the products were available as individual track downloads for amounts ranging as low as $0.99 per track or **even free** in some instances. See Exhibits "E" and "F" annexed to the Bryant Declaration; see also Bryant Declaration at ¶31-38. Astonishingly, Media Right Productions was listed not only as the artist *but also the copyright holder for these compositions*. *See* Exhibit "F" – (P) 2000 – Media Right, Exhibit "E" and "Exhibit "H" annexed to the Bryant Declaration.

Further research on the internet revealed that The Orchard was acting as a label and/or distributor for these products and was selling them through their website and

through outlets such as iTunes, eMusic, Rhapsody, Napster, MSN Music and countless others. See Exhibit "G" and "H" annexed to the Bryant Declaration.

Thereafter, Plaintiffs contacted Counsel and this action was commenced for Trademark/Service Mark infringement, Common Law Trade Dress Infringement, Unfair Competition, Violation of Plaintiff's Trade Dress as Protected under Section 43(a)(1) of the Lanham Act, Copyright Infringement, Contributory Copyright Infringement Breach of Contract, Breach of Fiduciary Duty and Unjust Enrichment.

Based upon the facts, this is not only a case where a contract was breached but also, and most importantly, a case where each of Plaintiff's trademarks and copyrights were carelessly violated by Defendants Media Right and The Orchard.

### STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is proper where the moving party demonstrates that no genuine issue exists as to any material fact and it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322023 (1986). Rule 56(d) authorizes the district courts, where practicable, to "ascertain what material facts exist without substantial controversy and what

10

material facts are actually and in good faith controverted"
and to "make an order specifying the facts that appear
without substantial controversy." Fed R. Civ. O. 56(d);
France Stone Co. v. Charter Township of Monroe, 790 F.Supp
707, 710 (E.D. Mich. 1992)(granted motion for partial
summary judgment as to facts that were beyond dispute).

Not every factual dispute precludes summary judgment;
rather there must be "no genuine issue of material fact."
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48
(1986). The standards for granting partial summary
judgment are the same as those which apply to a motion for
summary judgment on all issues in an action. *See* France
Stone, 790 F.Supp at 710; Rivera v. United States, 2007 US
Dist. LEXIS 30960, at *7 (W.D. Tex. 2007).

The moving party bears the initial burden of showing
an absence of evidence supporting the nonmoving party's
case. Celotex, 477 U.S. at 325. Once the moving party
meets this burden, the burden shifts to the nonmoving party
to demonstrate a genuine issue for trial on a material
matter. *Id*. The nonmoving party many not rest solely on the
allegations contained in the pleadings; it must instead
designate "specific facts showing there is a genuine issue
for trial." Celotex, 477 U.S. at 325; see also Fed. R. Civ.
P. 56(e).

**ARGUMENT**

**Defendants Infringed Upon Plaintiffs' Copyrights**

**COPYRIGHT GENERALLY**

Protection under the Copyright Law entitles the Copyright holder to certain protections and exclusive rights such as the right to produce copies or reproductions of the work and to sell those copies (including, typically, electronic copies), to import or export the work, to create derivative works (works that adapt the original work), to perform or display the work publicly, to sell or assign these rights to others, to transmit or display by means of digital audio transmission. 17 U.S.C. 106 (2006).

**Copyright Infringement Generally**

In order to prevail in a copyright action under the Copyright Act, Plaintiffs must show: (1) ownership of a valid copyright, and (2) unauthorized copying or distribution of the copyrighted work. Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (2001). "Reduced to most fundamental terms, there are only two elements necessary to the Plaintiff's case in an infringement action: ownership of the copyright by the plaintiff and copying [or public distribution or public

12

display] by the defendant." 4 M. & D. Nimmer, NIMMER ON COPYRIGHT §13.01, at 13-5 & n.4 (2002). Each of the musical compositions, artwork and text, that are the subject of this action, are copyrighted in compliance with the Copyright Act. Each of these two elements has been shown.

Specifically, each of the copyrighted works that are the subject of this action have been registered by Plaintiffs and there has been an unauthorized copying and distribution of Plaintiffs' copyrighted works. *See* Declaration of Anne Bryant at ¶10-13 and Declaration of Ellen Bernfeld at ¶9-12; *see also* Exhibit "F" annexed to the Monaghan Declaration listing at least 4,605 instances of unauthorized copies sold by The Orchard through its third party partners. Moreover, as discussed above, registration of the copyrights by Plaintiffs creates a presumption of ownership of these copyrights. Micro Star v. Formgen Inc. 154 F.3d 1107; 17 U.S.C. §410(c).

Plaintiffs are exclusive owners of said copyrights and thus retain the exclusive rights to reproduce, distribute, assign, and to authorize the reproduction and distribution of these recordings, artwork and text. None of these exclusive rights were ever granted or otherwise transferred to anyone including Media Right or The Orchard. *See* Bryant

13

Declaration at ¶39.   Douglas Berlent, the owner of Media Right acknowledged that there is nothing in the Media Right agreement with Gloryvision that authorized Media Right to do anything other than sell the CDs and tapes for Songs for Dogs and Songs for Cats. *See* Exhibit "B" annexed to the Monaghan Declaration at page 94, lines 5-10. In fact, the agreement specified that if additional copies of the recordings were needed, Mr. Berlent would tell Ellen Bernfeld and Ellen Bernfeld would then procure more physical copies and forward them to Mr. Berlent. *See* Exhibit "D" at page 96-97, lines 24-7 annexed to the Monaghan Declaration.  This was Mr. Berlent's "…only way of obtaining the product." *See* Exhibit "D" at page 97, lines 6-7 annexed to the Monaghan Declaration.

However, Mr. Maxwell also later claimed that he had the right to sell the recordings on Internet sites pursuant to the agreement.

Q:   Okay, so where did you have – Coming back to my original question, which I thought you had answered, obliquely, before, which is: By what authority could copies be made of this product, copies that didn't come from my clients, directly? Your Counsel read

14

Paragraph 3 and I wanted to know which words there said that?

A:   The reference to recordings and Internet sites, that, even at that time of this Agreement, there was no other way to participate in that domain.

Q:   Well, what is amazon.com? Isn't that an Internet site?

A:   It is an Internet site.

.........

Q:   …..What Internet sites did you have in mind at the time?

A:   Well that references back to the discussions that Ellen and I had in our conversation and basis for the excitement that we shared. Specifically, The Orchard, was the basis for that.

*See* Exhibit "D" annexed to the Monaghan Declaration at pages 101-102.

While Mr. Maxwell claims he had the right to sell the recordings on "Internet sites", pursuant to the agreement, Jason Pascal, a representative of the Orchard acknowledged that as of 2000, *The Orchard sold only physical media. See* Exhibit "E" annexed to the Monaghan Declaration at page 42, lines 3-13.

Q:  And, as of 1999 and 2000, what were the known means and media that The Orchard sold Songs For Cats and Songs For Dogs through?

A:  We sold, at that time, physically, meaning CDs. I don't know that we sold, digitally, yet, at that time. I don't know, exactly, when that began.

See Exhibit "E" annexed to the Monaghan Declaration at page 42, lines 3-13.

However, sometime after 2000, The Orchard began selling digital copies of Plaintiffs' physical media pursuant to the Media Right / Orchard agreement in which Media Right expressly authorized The Orchard to sell "…by any and all means and media." See Exhibit "E" at page 42, lines 3-13 annexed to the Monaghan Declaration. Given the fact that as of the date of the Media Right / Gloryvision agreement (February 24, 2000), The Orchard sold physical copies online through Internet sites, such as amazon.com at the time, there is no question that the Media Right / Gloryvision "Product Representation Agreement" contemplated sales of physical copies of the Songs For Dogs / Songs For Cats cassettes and compact discs.  In fact, the agreement specifically references Media Right to "…act as agent and representative, on a non-exclusive basis *for the CDs and tapes* entitled "Songs For Dogs" and "Songs For Cats", and

16

"Songs For Dogs CD and Book." (emphasis added). *See* Paragraph 2 of Exhibit "A" annexed to the Declaration Anne Bryant.

The intentional creation of digital copies by Defendants for sales through digital download services is an infringement on Plaintiffs' exclusive copyrights. Anyone who violates *any* of the exclusive rights of the copyright owner as provided by section 106 is an infringer of the copyright. 17 U.S.C. 501(a).

### The Infringement Was Willful Infringement

Willful infringement "means [acting] with knowledge that defendant's conduct constitutes copyright infringement." Peer Int'l Corp. v. Pausa Records, Inc. 909 F.2d 1332, 1336 (9th Cir. 1990) (citing 3 M. Nimmer & D. Nimmer, NIMMER ON COPYRIGHT §14.04[B], at 14-40.2-3 (1989)). Knowledge may be either actual or constructive. GMA Accessories, Inc. v. Olivia Miller, Inc., 139 Fed. Appx. 301, 303 (2d Cir. 2005); Island Software & Computer Serv. v. Microsoft Corp. 413 F.3d 257, 264 (2d Cir. 2005)("even in the absence of evidence establishing the infringer's actual knowledge of infringement, a plaintiff can still prove willfulness by proffering circumstantial evidence that gives rise to an inference of willful conduct.")

17

Despite an initial authorization by Plaintiffs to allow Defendant Media Right to distribute physical tangible copies of their products, at no time have Plaintiffs authorized Defendants Media Right or The Orchard to unbundle, alter, copy (digitally or otherwise), or to offer to sell any unbundled or altered digital copies of the physical recordings. The agreement between Media Right and Plaintiffs did not allow Media Right or any third party (including The Orchard) to make copies. Mr. Berlent acknowledged that the Media Right agreement did not contain any authority to allow Media Right or any other third parties to make copies of the recordings. *See* Exhibit "D" annexed to the Monaghan Declaration at page 97-98, lines 21-4.

Twenty three days before entering into an agreement with Plaintiffs, Mr. Berlent entered into an agreement with The Orchard whereby The Orchard could sell Plaintiffs' recordings "…by any and all means and media." *See* Exhibit "E" at page 42, lines 3-13[4] annexed to the Monaghan Declaration; see also Mediaright / Orchard Agreement dated February 1, 2000 annexed to the Monaghan Declaration as Exhibit "A". Moreover, both Media Right and The Orchard

_____

[4] It is important to note that as of 2000, The Orchard sold only physical media. Sometime after 2000, The Orchard began selling digital copies of Plaintiffs' physical media pursuant to the Media Right / Orchard agreement in which Media Right expressly authorized The Orchard to sell "…by any and all means and media." See Exhibit "E" at page 42, lines 3-13 annexed to the Monaghan Declaration.

claimed copyright and authorship of Plaintiffs' recordings, associated artwork and text.    See Exhibits "C" – "F" annexed to the Bryant Declaration.

Mr. Berlent's acknowledgment that he could **_only obtain additional copies of the recordings from the Plaintiffs_** according to the terms of the agreement and his actions by way of The Orchard in selling unauthorized digital copies through a multitude of The Orchard's electronic download partners further demonstrates a case for willful infringement.

Defendants have willfully produced digital copies of Plaintiffs' recordings, willfully distributed the digital copies of Plaintiffs' recordings, willfully claimed authorship of Plaintiffs' recordings and willfully claimed copyright of Plaintiffs' recordings, all in clear violation of the Copyright Act.

### TRADEMARK INFRINGEMENT AND TRADE DRESS INFRINGEMENT

Plaintiff Gloryvision, Ltd., is the owner of the copyrights with respect to the foregoing compositions and musical recordings.    Each copy of Songs for Dogs and Songs for Cats prominently displayed the Gloryvision logo and copyright notice.    As a result of Plaintiffs' unique and distinctive marks and substantial promotion, sales and advertising including television and the Internet,

throughout the United States, of Plaintiffs' recordings, merchandise, and products under the service marks, the marks have developed into strong service marks and have come to indicate to consumers a product or service originating only with Plaintiffs.

Defendants willfully unbundled Plaintiffs product and sold it "piecemeal" for profit while claiming ownership, copyright and authorship of the compositions each of which failed to feature any identification of the Gloryvision, Ltd. marks. Defendants' willful infringement has caused a dilution of the value of Gloryvision's marks and reputation and has caused a great burden on Gloryvision's future sales and business related to producing and distributing sound recordings for profit all while profiteering and promoting Media Right's marks and alleged authorship on the goodwill of talent of Gloryvision, Ellen Bernfeld and Anne Bryant, the Plaintiffs.

## CONCLUSION

For all of these reasons, Plaintiffs respectfully submit that no issues of material fact exist as to the issues of, and request an order finding that (1) Plaintiffs are and at relevant times have been the owners of exclusive rights under United States Copyright law with respect to the sound recordings, associated artwork and text that are

at issue in this case and (2) that Defendants are joint and severally liable for copyright infringement of Plaintiffs' sound recordings, associated artwork and text that are at issue in this case. Plaintiffs further request such other relief as the Court deems just and necessary.

Respectfully Submitted,

_____
Patrick J. Monaghan, Jr. (PJM6297)
Counsel for Plaintiffs
Monaghan, Monaghan, Lamb
& Marchisio, LLP

401 East 65th Street, Ste. 10C
New York, New York 10019
(212) 541-6980
                    &
28 West Grand Avenue
Montvale, New Jersey 07645
Tel. (201) 802-9060
Fax. (201) 802-9066

21