UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ANNE BRYANT, ELLEN BERNFELD, AND GLORYVISION, LTD.,

                                                Plaintiffs,

Civil Action No.: 07-CV3050(CLB)

- against -

**AFFIDAVIT OF JASON PASCAL**

EUROPADISK, LTD., MEDIA RIGHT PRODUCTIONS, INC., VERY COOL MEDIA, INC., DOUGLASS MAXWELL, THE ORCHARD ENTERPRISES, INC., and RUSSELL J. PALLADINO

                                                Defendants.
-------------------------------------------------------------------X

Jason Pascal, being duly sworn and deposed, says:

1.    I have been Vice President and Senior Counsel of The Orchard Enterprises, Inc. ("The Orchard") in the above-referenced action for about three years and have personal knowledge of the facts and circumstances described herein.

2.    I submit this affidavit on behalf of the Orchard in support of the Defendants' Motion for Summary Judgment.

## BACKGROUND

3.    The Orchard is a leading worldwide music distribution service and music wholesaler based in New York City. Through license agreements, we obtain content and distribution rights for recordings from various artists and record labels. The Orchard distributes such compositions through third-party retailers worldwide in both digital and physical formats.

1

## THE ORCHARD AGREEMENT

4. In or around February of 2000, The Orchard entered into a distribution agreement with Media Right, whereby The Orchard would distribute various recordings for Media Right (the "Orchard Agreement"). The Orchard Agreement is set forth in Defendant's Exhibit 2.

5. Pursuant to the Orchard Agreement Media Right authorized The Orchard to distribute eleven (11) musical recordings including two (2) recordings of Plaintiffs: "Songs for Cats" and "Songs for Dogs" (the "Gloryvision Recordings") and certain Media Right recordings (the "Media Right Recordings").

6. The Orchard Agreement contains an indemnification provision pursuant to which Media Right is currently providing counsel for The Orchard and is bound to indemnify The Orchard for any damages that may arise from this lawsuit. *See* §8 of the Orchard Agreement.

7. The Orchard Agreement contains several provisions pursuant to which The Orchard was authorized by Media Right to market and sell the Gloryvision Recordings.

8. For example, the third paragraph of the Orchard Agreement provides that:

> "You grant to us throughout the Territory during the Sales Period and the NON-EXCLUSIVE rights to sell, distribute and otherwise exploit any and all of your Recordings by and any and all means and media (whether now known or existing in the future), including, without limitation, the non-exclusive rights to sell, distribute and otherwise exploit any and all of your Recordings throughout E-Stores including, but not limited to, those via the Internet, as well as all digital storage, download and transmission rights, whether now known or existing in the future."

9. Based upon the foregoing provision, we believed that we had full authorization to distribute the Gloryvision Recordings in any and all manner.

10. The term "Recordings" was also defined in the eleventh paragraph of the Orchard Agreement. It provides that: "Recordings means each and every compact disc and/ or any other

audio and/ or audiovisual recording in any format, in whole or in part (whether now known or existing in the future) which you deliver during the term."

11. Pursuant to the Orchard Agreement, it was our understanding that we were authorized to sell the Gloryvision Recordings in CD format, as well as in any other format, in singles format or a full compilation.

12. At or about the time when iTunes was launched in approximately April 2004, when digital downloads of music content became a viable business, we believed that the foregoing provisions of the Orchard Agreement allowed our digital distribution (including, without limitation, downloads) of the Gloryvision Recordings in both the entire titles and as well as in individual songs, based upon the language "in any format, in whole or in part."

13. Moreover, The Orchard Agreement defines "E-Stores" as "electronically or digitally accessed commercial retailers (whether now known or created in the future) including, but not limited to on-line record stores or websites".

14. The Orchard Agreement further provided that we would pay Media Right seventy percent (70%) of net income (defined as gross sales less expenses) for the sale of the recordings provided by Media Right, including the Gloryvision Recordings and the Media Right Recordings (the "<u>Media Right Royalties</u>").

15. Over the years, The Orchard periodically delivered checks of the Media Right Royalties to Media Right (the "<u>Media Right Royalty Checks</u>"). The Media Right Royalty Checks did not contain any breakdowns of the individual recordings giving rise to the Media Right Royalties.

16. In April 2008, in connection with the present litigation, Mr. Peter Cairis, The Orchard Director of Royalties, prepared spreadsheets setting forth the total sales of the Gloryvision Recordings in both CD and digital formats.

17. The spreadsheet detailing the CD sales of the Gloryvision Recordings is set forth in Defendant's Exhibit 3, at Exhibit B, and covers the period of April 1, 2002 through April 8, 2008.

18. The spreadsheet detailing the digital sales of the Gloryvision Recordings is set forth in Defendant's Exhibit 3, at Exhibit A, and covers the period January 1, 2004 through April 8, 2008.

19. According to our records, The Orchard generated $2.26 in revenues from CD sales of "Songs for Cats" and $9.98 from CD sales of "Songs for Dogs". Media Right's share under the Orchard Agreement of such sales was $1.58 and $7.00, respectively.

20. Also according to our records, The Orchard generated $195.40 in digital download sales of "Song for Cats" and $383.51 from "Songs for Dogs." Media Right's shares under the Orchard Agreement of such sales were $136.78 and $268.46, respectively.

21. Pursuant to the Orchard Agreement, Media Right provided full assurances, representations, and warranties that it had full right and authority to grant The Orchard full distribution rights in the Gloryvision Recordings and the Media Right Recordings.

22. The Orchard Agreement contained the following extensive representation and warranties of authority and name infringement:

"You warrant and represent that You have the right to grant us (and any person or company named by us) the rights, contained herein, without any liability to us or any other person or company from whom the rights are obtained. You will be solely responsible to pay all applicable persons and companies (including, but not limited to all music publishers) for all rights to use all recorded performances and/or other artistic materials (including, but not limited to all musical compositions and/or samples) contained in your Recordings (and/or in all artwork). You warrant that the use of the same by us (any person or company named by us) will not infringe upon the rights of any nature or any person or company. You agree to indemnify, reimburse, and hold us our officers, members, agents, representatives, successors, designees and assigns harmless from and against any and all liability loss, damage, cost and expense (including court costs and reasonable attorney's fees) arising out of or connected with any claim by any one or more third party which arises out of any breach of any of your warranties herein, representations or agreements.

23. We relied completely on the foregoing assurances that our distribution of the Gloryvision Recordings would not infringe any third party right and fully believed that such warranties and representations were true and accurate.

24. I understand that the Plaintiffs found certain third-party web sites that showed a © and ℗mark, apparently wrongly attributing copyright ownership of the Gloryvision Recordings to The Orchard.

25. While we can understand why Plaintiffs would be unhappy with such wrongful attribution, we never took any action, nor instructed anyone to affix such an incorrect copyright attribution on any such third-party websites. In fact, we do not know who made such wrongful attribution or why. Moreover, we are in the business of distributing music of others and are not in the business of creating original works or copyrights in music.

26. Pursuant to The Orchard Agreement, we attempted to sell the Gloryvision Recordings, through various retailers such as iTunes and Amazon.com.

27. Other than The Orchard Agreement with Media Right and our receipt and distribution of the Gloryvision Recordings, we have no relationship whatsoever with the Plaintiffs in this action.

28. We have no written or oral agreement with the Plaintiffs and prior to the commencement of this lawsuit we never had any relationship with the Plaintiffs.

29. Until we were served with the summons and complaint in the current matter we continued to follow the terms of the Orchard Agreement regarding the marketing and distribution of the Gloryvision Recordings.

30. Immediately upon receiving the summons and complaint in this case, I instructed The Orchard personnel to immediately remove access of the Gloryvision Recordings from our website and to suspend all distribution efforts of the Gloryvision Recordings forthwith, in accordance with our standard operating procedures.

31. Throughout the entire period of time that we distributed the Gloryvision Recordings, we fully believed that we were authorized pursuant to the Media Right Agreement to do so and that our distribution of the Gloryvision Recordings was not infringing.

32.  Based upon the foregoing, we respectfully request this Court to grant Defendants' Motion for Summary Judgment.

Dated: New York, NY
       June 6, 2008



JASON PASCAL

Subscribed and sworn to before me, this 6th day of June, 2008

NOTARY PUBLIC

STANLEY H. SCHNEIDER
Notary Public, State of New York
No. 02SC5030090
Qualified in Westchester County
Certificate filed in New York County
Commission Expires July 5, 20__