UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------X
ANNE BRYANT, ELLEN BERNFELD, and
GLORYVISION, LTD.                                                         Case No. 07-cv-3050

                                    Plaintiffs,

    - against -

EUROPADISK, LTD., MEDIA RIGHT PRODUCTIONS,
INC., VERY COOL MEDIA, INC., DOUGLASS
MAXWELL, THE ORCHARD ENTERPRISES, INC.,
and RUSSELL J. PALLADINO
                                    Defendants.
------------------------------------------------------------------------------X

**DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS**

Defendants Media Right Productions, Inc. ("Media Right"), Douglas Maxwell ("Mr. Maxwell"), and The Orchard Enterprises, Inc. ("The Orchard") (collectively the "Defendants"), set forth below as and for their statement pursuant to Local Civil Rule 56.1, the following material facts, as to which the Plaintiffs contend there is no genuine issue to be tried:

1.    Media Right is a small music production company based in New York City. *See* Maxwell Affidavit at ¶¶ 4.

2.    Douglas Maxwell is the President and sole manager of Media Right. *See* Maxwell Affidavit at ¶¶ 3.

3.    The Orchard is a leading worldwide music distribution service and music wholesaler based in New York City. *See* Pascal Affidavit at ¶¶ 3.

4.    Plaintiff, Gloryvision is a New York corporation with its principal place of business in New York. See Bryant Deposition at ¶¶ 6-17, p. 7.

5.    In February of 2000, Media Right entered into a distribution agreement with co-Defendant The Orchard, whereby The Orchard would distribute various recordings for Media Right. *See* the "Orchard Agreement," *See* Maxwell Affidavit at ¶¶ 27; Pascal Affidavit at ¶¶ 4.

1

6. The Orchard Agreement contains warranties and representations stating that Media Right had all rights and authority required to allow marketing, sale and distribution of the recordings without infringing the intellectual property rights of others. *See* Maxwell Affidavit at ¶¶ 30; Pascal Affidavit at ¶¶ 8.

7. The Orchard believed and relied on the truth and veracity of such representations and warranties when entering the Orchard Agreement and selling recordings provided by Media Right. *See* Pascal Affidavit at ¶¶ 23.

8. The Orchard thus believed that Media Right was duly authorized to grant the rights to The Orchard to distribute the Gloryvision Recordings. Id. at 21.

9. The Orchard Agreement further allowed The Orchard to sell, distribute, and market all recordings provided by Media Right without limitation in any form, subject to payment of royalties to Media Right. Id.

10. Plaintiff, Gloryvision, Ltd. ("Gloryvision") and Media Right, entered into a music representation agreement (the "Gloryvision Agreement,") in February of 2000. *See* Gloryvision Agreement set forth in Defendants' Exhibit 1.

11. The Gloryvision Agreement was prepared and signed by Mr. Maxwell and Plaintiff Ellen Bernfeld on behalf of Media Right and Gloryvision, respectively.

12. The Gloryvision Agreement authorized Media Right to "act as agent and representative" of Gloryvision with respect to Gloryvision's recordings entitled "Songs for Dogs" and "Songs for Cats" (the "Gloryvision Recordings"). *See* Maxwell Deposition at ¶¶ 2-5, p. 76; ¶¶ 8-10, p. 77; *See* Bernfeld Deposition at ¶¶ 20-23, p. 77; §§ 2-3 of the Gloryvision Agreement.

13. Under the Gloryvision Agreement, Media Right was required to "use its best efforts to promote these recordings to catalogues, shopping networks, internet sites, retailers, and wholesalers." *See* §§ 2-3 of the Gloryvision Agreement.

14. Under the Gloryvision Agreement, Media Right was entitled to a 20% commission on all sales of the Gloryvision Recordings, with 80% to be forwarded to Gloryvision. *See* § 4 of the Gloryvision Agreement.

15. The Gloryvision Agreement contemplated that Media Right would utilize its relationships with other distributors to market the Gloryvision Recordings. *See* § 4 of the Gloryvision Agreement.

16. Gloryvision delivered to Media Right a box of approximately 40-50 CD's containing the Gloryvision Recordings, comprised of approximately 20-25 CD's entitled "Songs for Cats" and another approximately 20- 25 CD's entitled "Songs for Dogs." *See* Maxwell Affidavit at ¶¶ 20.

17. Pursuant to the Gloryvision Agreement, Media Right marketed the Gloryvision Recordings by reaching out to pet-related retailers, such as Pets.com, and posted marketing materials for the Gloryvision Recordings on the Media Right web site. *See* Maxwell Affidavit at ¶¶ 21.

18. Pursuant to the Orchard Agreement, Media Right also delivered the Gloryvision Recordings, together with nine (9) Media Right CD's (the "Media Right Recordings"), to The Orchard for distribution of such recordings. *See* Maxwell Deposition at ¶¶ 18-19, p.125.

19. Mr. Maxwell believed that the Gloryvision Agreement authorized him to sell and distribute the Gloryvision Recordings pursuant to The Orchard Agreement. *See* Maxwell Affidavit at ¶¶ 28.

20. Despite Media Right's marketing attempts, Media Right had no direct sales of any Gloryvision Recordings. Id. at 22.

21. Media Right maintained the Gloryvision Recordings with The Orchard until 2007. Id.

22. Media Right also maintained the marketing materials for the Gloryvision Recordings on the Media Right web site with the hope of facilitating sales of the Gloryvision Recordings until 2007. Id.

23. Gloryvision's sales revenues from the Gloryvision Recordings from 1994 until 2000 were minimal and royalties from radio plays of the Gloryvision Recording between 1994 and 1997 were around $1,000. *See* Bryant Deposition at ¶¶ 17-20, at p. 20; ¶¶ 15-16, at p.69 There were virtually no sales of the Gloryvision Recordings after 2000 by Gloryvision. *See* Bryant Deposition at ¶¶ 3-4, at p.19, ¶¶17-20, at p. 20; pages 15-20.

24. From April 1, 2002 until April 8, 2008, The Orchard generated $2.26 in revenues from CD sales of "Songs for Cats" and $9.88 from "Songs for Dogs." Media Right's share under the Orchard Agreement was $1.58 and $7.00, respectively. *See* Pascal Affidavit at ¶¶ 19.

25. From January 1, 2004 to April 8, 2008, The Orchard generated $195.40 in total revenues from downloads of "Songs for Cats" and $383.51 from "Songs for Dogs" Media Right's share under the Orchard Agreement amounted to $136.78 and $268.46, respectively. *See* Pascal Affidavit at ¶¶ 20.

26. Media Right received small royalty checks from The Orchard over the years. *See* Maxwell Affidavit at ¶¶ 33.

27. Mr. Maxwell was unaware that such checks included royalties from the Gloryvision Recordings. Id. at 34.

28. No written royalty breakdown accompanied the checks identifying the source of the revenues. *See* Maxwell Affidavit at ¶¶ 34; Pascal Affidavit at ¶¶ 15.

29. Media Right mistakenly believed that all royalties were due from the Media Right Recordings. *See* Maxwell Affidavit at ¶¶ 34.

30. In total, unbeknownst to Mr. Maxwell, Media Right apparently received $413.82 in sales revenues generated from the Gloryvision Recordings, and unintentionally neglected to forward $331.06 of those revenues to Gloryvision. *See* Maxwell Affidavit at ¶¶ 36.

31. No notice of termination or expiration of the Gloryvision Agreement was ever delivered by Gloryvision. *See* Maxwell Affidavit at ¶¶ 24.

32. Media Right continued to perform under the Gloryvision Agreement under the assumption that it was still in effect. *See* Maxwell Affidavit at ¶¶ 25.

33. Mr. Maxwell believed that the Agreement was still in full force and effect until being served with the complaint in this matter. *See* Maxwell Affidavit at ¶¶ 25.

34. Plaintiffs commenced the instant lawsuit on April 16, 2007.

35. Plaintiffs never contacted Mr. Maxwell before commencing this action to inquire about possible royalties owed. *See* Bryant Deposition at ¶¶ 24-25, p. 67; ¶¶ 25, p. 96; ¶¶ 1-3, 10-12; p. 97; *see* Maxwell Affidavit at ¶¶ 47.

36. Mr. Maxwell has never sought to take credit for the Gloryvision Recordings, nor represented to anyone that Media Right owned the copyrights in the Gloryvision Recordings. *See* Maxwell Affidavit at ¶¶ 40, 41.

37. The Orchard has never sought to take credit for the Gloryvision Recordings, nor represented to anyone that The Orchard owned the copyrights in the Gloryvision Recordings. *See* Pascal Affidavit at ¶¶ 25.

38. Mr. Maxwell did not instruct anyone to add © or (p) with Media Right's name on any of the Gloryvision Recordings on third-party web sites. *See* Maxwell Affidavit at ¶¶ 43.

39. Mr. Maxwell is unaware of how these designations may have occurred. *See* Maxwell Affidavit at ¶¶ 43.

40. With respect to copyrights in the Gloryvision Recordings, Plaintiffs own fourteen (14) potentially relevant registrations, as follows: (i) nine (9) Performing Arts registrations of separate songs from "Songs for Cats"; (ii) three (3) Sound Recording registrations for both albums and four (4) "Songs for Dogs" singles; and (iii) two (2) Visual Arts registrations for CD artwork of the two CDs. *See* Plaintiffs' copyright registrations forth in Defendants' Exhibit 9.

41. In February of 2008, Plaintiffs elected to rely solely on statutory damages under the Copyright Act and have waived claims against all other damages. *See* Defendants' Exhibit 5.

42. Plaintiffs have not registered any trademarks with the U.S. Patent and Trademark Office, nor filed any trademark applications related to the Gloryvision Recordings. *See* Bryant Deposition at ¶¶ 6-10, p. 54.

43. Other than several telephone calls between Mr. Maxwell and Ms. Bernfeld and Ms. Bryant at or about the time of signing the Gloryvision Agreement, prior to service of the

complaint in this lawsuit. Defendants had no contact at all with Plaintiffs. *See* Maxwell Affidavit at ¶¶ 49.

44.     The Orchard has no contractual or other relationship with Plaintiff's. *See* Pascal Affidavit at ¶¶ 27.

45.     Upon being served with the complaint in this matter, The Orchard immediately suspended all sales and marketing of the Gloryvision Recordings. *See* Pascal Affidavit at ¶¶ 30.

Dated: New York, NY
       June 6, 2008

                                    Respectfully submitted,

                                    /s/<u>MITCHELL C. SHELOWITZ</u>
                                    Mitchell C. Shelowitz
                                    Shelowitz & Associates PLLC
                                    *Attorneys for Defendants*
                                    11 Penn Plaza, 5th Floor
                                    New York, New York 10001
                                    Tel.: (212) 655-9384