UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
ANNE BRYANT, ELLEN BERNFELD,
and GLORYVISION, LTD.,                       Doc. No. 07-Civ-3050
                                             (CLB)
                              Plaintiffs,

   -against-


EUROPADISK, LTD., MEDIA RIGHT
PRODUCTIONS, INC., VERY COOL MEDIA,
INC., DOUGLAS MAXWELL, THE ORCHARD
ENTERPRISES, INC. and RUSSELL J.
PALLADINO,
                              Defendants.
--------------------------------------X


---

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---


Monaghan, Monaghan, Lamb
& Marchisio, LLP

401 East 65th Street, Ste. 10C
New York, New York 10019
(212) 541-6980
                &
28 West Grand Avenue
Montvale, New Jersey 07645
Tel. (201) 802-9060
Fax. (201) 802-9066


Michael Korik

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................1

BACKGROUND FACTS .........................................................................2

ARGUMENT ......................................................................................3

   THE STANDARD UNDER RULE 56 .......................................................3

   DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT........................5

      A.   The Gloryvision Agreement ............................................6

      B.   Only Tangible Products (CDs and Cassettes) Are
          Referenced By The Product Representation Agreement .6

      C.   Internet Sites = Sites That Sell Physical Copies ......7

      D.   Defendants' Profits And Sales Are Irrelevant To The
          Copyright Claim ........................................................9

      F.   Plaintiffs' Copyrights................................................11

      G.   Infringement By Defendants .......................................12

      H.   Defendants' Intent Is Not Necessary ..........................17

      I.   The Infringement Was Willful ....................................18

      J.   Trademark and Trade Dress Infringement ....................21

CONCLUSION ...................................................................................22

## TABLE OF AUTHORITIES

## Cases

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).3, 4

D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998)...4

DeAcosta v. Brown, 146 F.2d 408 (1944), cert. denied, 325 U.S. 862 (1945) .................................................................18

Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (2001). .............................................................11, 12

Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., 807 F.2d 1110, 1114 (2d Cir. 1986)( .......................................................9

Fonovisa, Inc. v. Cherry Auction, Inc. 76 F.3d 259, 262 (9th Cir. 1996) ...............................................................17

Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 428 (2d Cir. 2001) .................................................................4

Gershwin Publishing Corp. v. Columbia Artists Management, Inc., 443 F. 2d 1159, 1162 (2 nd Cir. 1971) ...................16, 17

GMA Accessories, Inc. v. Olivia Miller, Inc., 139 Fed. Appx. 301, 303 (2d Cir. 2005) .....................................19

Hayes v. N.Y. City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996) .................................................................3

In Hotaling v. Church of Jesus Christ of Latter-Day Saints, 118 F.3d 199 (4th Cir. 1997) ....................................14

In Re: Aimster Copyright Litigation, 334 F.3d 643, 649 (7th Cir. 2003) ...............................................................10

Island Software & Computer Serv. v. Microsoft Corp. 413 F.3d 257, 264 (2d Cir. 2005) .....................................19

Los Angeles News Serv. v. Reuters Television Int'l, Ltd., 149 F.3d 987, 996 (9th Cir. 1998) ............................10, 11

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) ..........................................................4

Micro Star v. Formgen Inc., 154 F.3d 1107, 1110 (9th Cir. 1998) .................................................................12

Niagra Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) ...........................................3

Peer Int'l Corp. v. Pausa Records, Inc. 909 F.2d 1332, 1336 (9th Cir. 1990) ...............................................18

Perfect 10 v. Google, Inc., 416 F. Supp. 2d 828, 844 (C.D. Cal. 2006). ...............................................................13

Pinkham v. Sara Lee Corp., 983 F.2d 824, 829 (8th Cir. 1992) .................................................................17

Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996) ............3

Sony Corp. of America v. Universal City Studios, 464 U.S. 417, 434-436 (1984) ...........................................16

Trans Sport, Inc. v. Starter Sportswear, Inc., 964 F.2d
   186, 188 (2d Cir. 1992) ..........................................................4
United States v. Rem, 38 F.3d 634, 644 (2d Cir. 1994) .............4

**Statutes**

17 U.S.C. §106(1) ...................................................................13, 15
17 U.S.C. §106(3) ...................................................................13, 14
17 U.S.C. §410(c) ...........................................................................12
17 U.S.C. §504(c)(1); ...................................................9, 15, 18
17 U.S.C. §504(c)(2) .....................................................................18
Columbia Pictures Television, Inc. v. Krypton Broad., 259
   F.3d 1186, 1194 (9th Cir. 2001) ...........................................10

**Treatises**

4 M. & D. Nimmer, NIMMER ON COPYRIGHT §13.01, at 13-5 & n.4
   (2002) ...........................................................................10, 13, 18

## PRELIMINARY STATEMENT

Plaintiffs submit this Memorandum of Law and the accompanying Declaration of Michael Korik in opposition to the Defendants' Motion for Summary Judgment.

Defendants' misrepresentation of this case as a simple contract case is made in bad faith. Likewise, Defendants' submission of self-serving and unsupported claims that they "believed" they had rights which the agreements belie and that they are unaware of how it happened that their claims of authorship and copyright just happened to be on the world wide web.

Plaintiffs are, and at all relevant times have been, the copyright owners of each of the Sound Recordings that are the subject of this action. *See* Exhibit "B" annexed to Plaintiffs' Motion for Summary Judgment. Plaintiffs properly registered their copyrights in these Sound Recordings before the date that Defendants were found distributing unauthorized digital copies of the recordings through the Internet. *See* Exhibit "B" annexed to Plaintiffs' Motion for Summary Judgment.

At no time were either of the remaining Defendants granted any authorization to copy or distribute digital copies of Plaintiffs' copyrighted sound recordings as

1

demonstrated by the terms of the Media Right/Gloryvision Agreement. *See* Exhibit "1" annexed to Defendants' Motion for Summary Judgment.[1] However, Defendants' own statements and records demonstrate that unauthorized digital copies of Plaintiff's intellectual property were distributed by Defendants on at least 4,605 separate instances of infringement. *See* Exhibit "F" annexed to Plaintiff's Motion for Summary Judgment.

Defendants seek to rely on their claims that there was a written agreement authorizing Defendants to market and sell Plaintiffs' "music" rather than its "product" and that there were no actual damages, to demonstrate entitlement to Summary Judgment. The Court can make the call on what the Product Representation Agreement signed by Ellen Bernfeld on February 24, 2000 permitted. Further, the Orchard Agreement with Media Right to which Plaintiffs were not parties is not binding on Plaintiffs in any way.

**BACKGROUND FACTS**

For the sake of brevity, a documented discussion of all relevant background facts was submitted in conjunction with Plaintiffs' Motion for Summary Judgment filed June 6,

---

[1] In fact, the subject product representation agreement specifically requires Media Right to notify Gloryvision is inventory of the product falls below 250 units of each title so that they can reorder additional tangible copies from Gloryvision. See Exhibit "1" annexed to Defendants' Motion for Summary Judgment.

2008 pursuant to the Court's scheduling order permitting dispositive motions to be filed by June 6, 2008. For purposes of this Memorandum, Plaintiffs rely upon the background facts previously submitted.

**ARGUMENT**

**THE STANDARD UNDER RULE 56**

When considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor. Niagra Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003). "[T]he judge must ask . . .not whether . . . the evidence unmistakably favors ones side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)

"Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment" Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996); *see also* Hayes v. N.Y. City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996) ("In applying th[e] summary judgment] standard, the court

3

should not weigh evidence or assess the credibility of witnesses."); United States v. Rem, 38 F.3d 634, 644 (2d Cir. 1994) (same).

However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." Anderson, 477 U.S. at 252 (emphasis added).

To defeat summary judgment therefore, nonmoving parties "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), and they "may not rely on conclusory allegations or unsubstantiated speculation." Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted); *see also* Trans Sport, Inc. v. Starter Sportswear, Inc., 964 F.2d 186, 188 (2d Cir. 1992) (noting that summary judgment cannot be defeated "on the basis of conjecture or surmise") (internal quotation marks omitted). At the summary judgment stage, a nonmoving party "must offer some hard evidence showing that its version of the events is not wholly fanciful." D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998).

4

## **DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT**

Defendants have failed to meet their burden in demonstrating their entitlement to summary judgment as a matter of law. Based upon the issues, evidence, exhibits, affidavits and declarations before the Court, Defendants have failed to document that there remain no issues of fact as to their right to make copies of Plaintiffs' recordings, claim authorship and copyright over the recordings nor profit from the sales of these copies. As such, and for the reasons discussed below, Defendants' Motion should be denied in its entirety.

### **Disputed Issues re: Defendants' Motion**:

1.  The terms of the Gloryvision Product Representation Agreement did not permit Defendants to make unauthorized copies of Plaintiffs' copyrighted recordings and associated artwork.

2.  Defendants have failed to account to Plaintiffs until this lawsuit was commenced.

3.  Defendants breached the Product Representation Agreement before it was even valid and signed by Gloryvision.

4.  Plaintiffs are the registered copyright owners of all of the relevant copyrights associated with "Songs for Cats" and "Songs for Dogs."

5.  Plaintiffs do not accept Defendants self-serving claims or their interpretation of the agreements. The Product Representation Agreement speaks for itself.

6.  Defendants have admitted to at least 4,605 instances of infringement.

**A.    The Gloryvision Agreement**

While Plaintiffs obviously acknowledge that there was an Product [not music] Representation Agreement in effect between Gloryvision and Defendant Media Right, it is important to note that Media Right was granted only a 36 month right to act as agent and representative, on a non-exclusive basis, to market the subject "products," CDs and tapes ("Songs for Dogs" & "Songs for Cats"). *See* Exhibit "1" annexed to Defendants' Motion for Summary Judgment. However, Defendants' moving papers misrepresent that the agreement granted the right to promote the "music" (i.e. the intellectual property) and the recordings. *See* Defendants' Memorandum of Law in Support of Defendants' Motion For Summary Judgment at Page 8. A plain reading of the agreement (the "Product Representation Agreement") explicitly describes that Media Right was authorized to act as agent and representative for the CDs and tapes *only*, not the contents thereof.

**B.    Only Tangible Products (CDs and Cassettes) Are Referenced By The Product Representation Agreement**

Further reference to the tangible products is evidenced by the agreements' discussion of Gloryvision promising to make its best efforts to promptly ship product to specified vendors following the receipt of orders and

6

that Gloryvision will notify Media Right if their inventory of these products (the tapes and cds for Songs for Dogs and Songs for Cats) falls below 250 units of each title. *See* Exhibit "1" annexed to Defendant's Motion for Summary Judgment. The Product Representation Agreement does not contain any language which would purport to allow Gloryvision or a third party such as The Orchard to make copies of, sell individual tracks from, or claim copyright ownership and or authorship of the tapes and CDs titled Songs for Cats and Songs for Dogs. *See* Exhibit "1" annexed to Defendant's Motion for Summary Judgment.

### C.    Internet Sites = Sites That Sell Physical Copies

While Defendants appear to hang their hat on the term "Internet sites" that appears in the Product Representation Agreement, and especially in focusing on the Orchard, testimony from Jason Pascal, a representative of the Orchard acknowledged that as of 2000, *The Orchard sold only physical media*. *See* Exhibit "E" annexed to the Monaghan Declaration in Support of Plaintiffs' Motion for Summary Judgment at page 42, lines 3-13:

> Q:  And, as of 1999 and 2000, what were the known means and media that The Orchard sold Songs For Cats and Songs For Dogs through?
>
> A:  We sold, at that time, physically, meaning CDs. I don't know that we sold, digitally, yet, at that time. I don't know, exactly, when that began.

7

> *See* Exhibit "E" annexed to the Monaghan Declaration in
> Support of Plaintiffs' Motion for Summary Judgment at
> page 42, lines 3-13; see also Pascal Affidavit at ¶12
> ("At or about the time when iTunes launched in
> approximately April 2004….we believed that the
> foregoing provisions of the Orchard Agreement allowed
> our digital distribution ….of the Gloryvision
> Recordings….in any format, in whole or in part.")

In fact, the CDs and tapes were sold through Internet
sites such as Amazon.com. Mr. Maxwell even attempted to
sell the CDs and tapes through Internet site Pets.com, an
online pet supply retailer. *See* Affidavit of Douglas
Maxwell at ¶21. However, sometime after 2000, The Orchard
began selling digital copies of Plaintiffs' physical media
pursuant to the Media Right / Orchard agreement in which
Media Right expressly authorized The Orchard to sell "…by
any and all means and media." *See* Exhibit "E" at page 42,
lines 3-13 annexed to the Monaghan Declaration in Support
of Plaintiffs' Motion for Summary Judgment; *see also*
Affidavit of Jason Pascal at ¶7-12.

Given the fact that as of the date of the Media Right
/ Gloryvision Product Representation Agreement (February
24, 2000), The Orchard sold physical copies online through
Internet sites, such as amazon.com, there is no question
that the Media Right / Gloryvision "Product Representation
Agreement" contemplated sales of physical copies of the

8

Songs For Dogs / Songs For Cats cassettes and compact discs.

### D. Defendants' Profits And Sales Are Irrelevant To The Copyright Claim

Defendants' gratuitous, improper and irrelevant representations that the sales of "Songs for Cats" and "Songs for Dogs" "were meager" and that there were "meager" royalties have no relevance or basis in this copyright infringement claim. Specifically, it has been held that Plaintiffs do not need to prove *any* actual damages to be entitled to an award of statutory damages. The Copyright Act provides that once copyright infringement has been established:

> [T]he copyright owner may elect, at anytime before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action,, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally.

17 U.S.C. §504(c)(1); *see also* <u>Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co.</u>, 807 F.2d 1110, 1114 (2d Cir. 1986)(*noting* that, upon proof of infringement, a copyright "…owner may elect to recover—instead of actual damages and profits—statutory damages under §504(c)(1) for those works whose copyrights were registered at the time the infringement occurred").

9

Therefore, Plaintiffs do not need to prove any actual damages to be entitled to an award of statutory damages. Plaintiffs *may elect statutory damages regardless of the adequacy of the evidence offered as to their actual damages and the amount of Defendant's profits*. <u>Columbia Pictures Television, Inc. v. Krypton Broad</u>., 259 F.3d 1186, 1194 (9th Cir. 2001) (*emphasis* added)(*citing* <u>Nimmer</u> §14.04[A]); *see also* <u>In Re: Aimster Copyright Litigation</u>, 334 F.3d 643, 649 (7th Cir. 2003) ("a copyright owner who can prove infringement need not show that the infringement caused him a financial loss"); <u>Los Angeles News Serv. v. Reuters Television Int'l, Ltd.</u>, 149 F.3d 987, 996 (9th Cir. 1998) ("a plaintiff may recover statutory damages whether or not there is adequate evidence of the actual damages suffered by the plaintiff or profits reaped by defendant, **in order to sanction and vindicate the statutory policy of discouraging infringement**") (**emphasis** added).

Therefore, explanations of Media Rights mistaken beliefs, their profits or their lack of effort to market "Songs for Cats" and "Songs for Dogs" have no relevance to this action. As such, Plaintiffs have established the elements of a copyright infringement claim: (1) ownership of the copyrights in this case and (2) unauthorized copying and can elect statutory damages "to sanction and vindicate

10

the statutory policy of discouraging infringement." <u>Los
Angeles News,</u> 149 F.3d 996; *see also* <u>Feist Publ'ns, Inc. v.
Rural Tel. Serv. Co.</u>, 499 U.S. 340, 361 (2001).

### F. **Plaintiffs' Copyrights**

Plaintiffs own each of the valid copyrights that are
the subject of this case and, thus, have exclusive rights
under copyright (e.g. reproduction and distribution rights)
in the Sound Recordings and associated artwork. *See* Ann
Bryant Declaration In Support of Plaintiffs' Motion For
Summary Judgment at ¶10-13 and Declaration of Ellen
Bernfeld in Support of Plaintiffs' Motion for Summary
Judgment at ¶9-12; see also copies of Copyright
registrations annexed to Plaintiffs' Motion for Summary
Judgment as Exhibit "B." Defendants have not presented and
cannot present any facts to dispute that Plaintiffs are the
owners of valid copyrights to these Sound Recordings and
associated art.

Indeed, Defendants have admitted that there are at
least "fourteen (14) copyright registrations which may
arguably be of relevance." *See* Defendants' Memorandum of
Law in support of Defendants' Motion for Summary Judgment
at page 11. However, two of these fourteen copyrights
discussed by Defendants are Sound Recording registrations
for "Songs for Cats" and "Songs for Dogs." These are the

11

very Sound Recordings that were copied by Defendants and are at issue before the Court on this Motion for Summary Judgment.   Therefore, Defendant admits that there are valid copyrights for the subject sound recordings. Nevertheless, this information is a matter of public record via the Copyright.gov website as well as annexed to Plaintiffs' Motion for Summary Judgment as Exhibit "B."   Therefore, there is no and can be no question as to the registration or ownership of these twenty recordings and associated art. In fact, registration of the copyrights creates a presumption of ownership of those copyrights. Micro Star v. Formgen Inc., 154 F.3d 1107, 1110 (9th Cir. 1998); 17 U.S.C. §410(c). There is no dispute as to the registration and ownership of these works.   Based upon the foregoing, Defendants' gratuitous claim that the infringement can only be limited to 14 works must fail.

G.    **Infringement By Defendants**

In order to prevail in a copyright action under the Copyright Act, Plaintiffs must show: (1) ownership of a valid copyright, and (2) unauthorized copying or distribution of the copyrighted work.   Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (2001). "Reduced to most fundamental terms, there are only two elements necessary to the Plaintiff's case in an

12

infringement action: ownership of the copyright by the
plaintiff and copying [or public distribution or public
display] by the defendant." 4 M. & D. Nimmer, NIMMER ON
COPYRIGHT §13.01, at 13-5 & n.4 (2002). Each of the musical
compositions, artwork and text, that are the subject of
this action, are copyrighted in compliance with the
Copyright Act. Each of these two elements has been shown.

The Copyright Act grants the copyright owner of a
sound recording the exclusive right to among other things,
"reproduce the copyrighted work in copies or phonorecords."
17 U.S.C. §106(1). The Copyright Act also grants the
copyright owner of a sound recording the exclusive right to
"distribute copies or phonorecords of the copyrighted work
to the public." 17 U.S.C. §106(3). A person or entity
violates a copyright holder's distribution right by making
an actual, unauthorized dissemination of a copyrighted
work. Perfect 10 v. Google, Inc., 416 F. Supp. 2d 828, 844
(C.D. Cal. 2006).

A person also violates a copyright holder's
distribution right by making copyrighted works available to
others without authorization from the copyright holder.
Section 106(3) of the Copyright Act gives the owner of a
copyright "the exclusive rights to do and to authorize any
of the following … (3) To distribute copies or phonorecords

13

of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending…" 17 U.S.C. §106(3). This language makes it clear that it is an actionable infringement for one to violate a copyright owner's exclusive right to authorize the distribution of copies or phonorecords of a copyrighted work. The distribution right does not require a consummated transfer of the copyrighted work at issue. Violating the exclusive right to authorize distribution is infringement. In Hotaling v. Church of Jesus Christ of Latter-Day Saints, 118 F.3d 199 (4th Cir. 1997), the Defendant obtained unauthorized copies of a work, added a listing of the unauthorized copies to its index and made the unauthorized copies available for distribution to the public in its library. The Court held that, even in the absence of proof that the work had been actually provided to the public, the work had been distributed within the meaning of 17 U.S.C. §106(3). See id. at 203. It was sufficient that the title of the work had been included in an index and that the work could have been checked out by a member of the public. See id.

Here, not only did Media Right and The Orchard make digital copies and distribute them, the Defendants added them to public searchable indexes, making them available on

14

scores of digital third party websites for sale, for stream and also for free, in clear violation of Plaintiffs' exclusive rights afforded under the Copyright statute. *See* Declaration of Anne Bryant at ¶31-38 in Support of Plaintiffs' Motion for Summary Judgment; *see also* Exhibits "E" and "F" annexed to the Bryant Declaration in Support of Plaintiffs' Motion for Summary Judgment.

Under copyright law, three types of infringement exist: (1) direct infringement, (2) contributory infringement, and (3) vicarious liability.

Direct infringement may be alleged against an individual or entity for engaging in conduct that violates one or more of a copyright owner's exclusive rights. Section 501(a) of the Copyright Act is clear in its scope and message: "Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122, is an infringer of … copyright …."

As discussed below, infringers are strictly liable. It is not a defense for a defendant to say that he did not know that the copying was infringing or that he acted innocently. Only the copyright owner has the right to do (or authorize others to do) those things that are included within the bundle of rights enumerated in section 106 of the Copyright Act. Use of the phrase *to authorize* has been

15

construed to incorporate liability of secondary infringers through two distinct theories of liability: contributory infringement and vicarious liability.

Contributory infringement liability may be asserted against "one who, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another …." Gershwin Publishing Corp. v. Columbia Artists Management, Inc., 443 F. 2d 1159, 1162 (2 nd Cir. 1971). To prevail on a contributory or vicarious infringement claim, a plaintiff must show direct infringement by a third party. See, e.g., Sony Corp. of America v. Universal City Studios, 464 U.S. 417, 434-436 (1984). Contributory infringement stems from the notion that a person who directly contributes to another's infringement should be held accountable.

Two factors come into play in determining liability for contributory infringement: (1) knowledge; and (2) inducement, causation, or material contribution. The Sony case held that one could not be liable as a contributory infringer for distributing a device that is capable of substantial non-infringing use.

However, vicarious liability, can be imposed on persons or entities who do not "induce" or "cause" direct infringement or who, for that matter, are not even aware

16

that another party is involved in infringing activity when their economic interests are intertwined with the direct infringers. Even in the absence of an employment relationship, a defendant may incur liability for various copyright infringements if the defendant "has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." _Fonovisa, Inc. v. Cherry Auction, Inc_. 76 F.3d 259, 262 (9th Cir. 1996) (quoting _Gershwin_, _supra,_ 443 F.2d at 1162).

The Orchard's economic interests were intertwined with the copyright infringement. On at least 4,605 occasions, the Orchard made available unauthorized copies of Plaintiffs' copyrighted sound recordings and copyrighted cover art. The Orchard had the ability to supervise the infringing activity and as such is liable for copyright infringement.

H. **Defendants' Intent Is Not Necessary**

Copyright is a strict liability offense and Plaintiffs need not demonstrate Defendants' intent to infringe, or even knowledge of infringement, in order to prove copyright infringement. _Pinkham v. Sara Lee Corp._, 983 F.2d 824, 829 (8th Cir. 1992) (describing liability for copyright infringement as absolute because "[t]he defendant's intent is simply not relevant: The defendant is liable for

17

'innocent' or 'accidental' infringements"). Copyright
liability is a strict liability offense. There is no intent
or knowledge requirement. Even innocent or accidental
infringements may produce liability. *See, e.g.* <u>DeAcosta v.
Brown</u>, 146 F.2d 408 (1944), *cert. denied*, 325 U.S. 862
(1945).

## I.    **The Infringement Was Willful**

While Defendants' argue that they were unaware and had
no reason to believe that their acts constituted an
infringement of copyright allowing the Court can reduce the
award of statutory damages, the Copyright Act provides that
the appropriate statutory damages for non-willful
infringement range from a minimum of $750 per work to a
maximum of $30,000 per work. See 17 U.S.C. §504(c)(1).
However, in the case of willful infringement, like this
one, "the court in its discretion may increase the award of
statutory damages to a sum of not more than $150,000.00"
per infringement. See 17 U.S.C. §504(c)(2).

Willful infringement "means [acting] with knowledge
that defendant's conduct constitutes copyright
infringement." <u>Peer Int'l Corp. v. Pausa Records, Inc</u>. 909
F.2d 1332, 1336 (9th Cir. 1990) (*citing* 3 M. Nimmer & D.
Nimmer, NIMMER ON COPYRIGHT §14.04[B], at 14-40.2-3
(1989)). Knowledge may be either actual or constructive.

GMA Accessories, Inc. v. Olivia Miller, Inc., 139 Fed. Appx. 301, 303 (2d Cir. 2005); Island Software & Computer Serv. v. Microsoft Corp. 413 F.3d 257, 264 (2d Cir. 2005)("even in the absence of evidence establishing the infringer's actual knowledge of infringement, *a plaintiff can still prove willfulness by proffering circumstantial evidence that gives rise to an inference of willful conduct*.")

Despite an initial authorization by Plaintiffs to allow Defendant Media Right to distribute physical tangible copies of their products, at no time have Plaintiffs authorized Defendants Media Right or The Orchard to unbundle, alter, copy (digitally or otherwise), or to offer to sell any unbundled or altered digital copies of the physical recordings. The agreement between Media Right and Plaintiffs did not allow Media Right or any third party (including The Orchard) to make copies. See Exhibit "1" annexed to Defendant's Motion for Summary Judgment. Mr. Berlent/Maxwell acknowledged that the Media Right agreement did not contain any authority to allow Media Right or any other third parties to make copies of the recordings. *See* Exhibit "D" annexed to the Monaghan Declaration in Support of Plaintiffs' Motion for Summary Judgment at page 97-98, lines 21-4.

Twenty three days before entering into an agreement with Plaintiffs, Mr. Berlent/Maxwell entered into an agreement with The Orchard whereby The Orchard could sell Plaintiffs' recordings "…by any and all means and media." *See* Exhibit "E" at page 42, lines 3-13[2] annexed to the Monaghan Declaration in Support of Plaintiffs' Motion for Summary Judgment; see also Media Right / Orchard Agreement dated February 1, 2000 annexed to the Monaghan Declaration in Support of Plaintiffs' Motion for Summary Judgment as Exhibit "A." Moreover, both Media Right and The Orchard claimed copyright and authorship of Plaintiffs' recordings, associated artwork and text despite a valid and visible copyright © mark on each physical copy of "Songs for Cats" and "Songs for Dogs" *See* Exhibits "C" – "F" annexed to the Bryant Declaration in Support of Plaintiffs' Motion for Summary Judgment.

Mr. Berlent's acknowledgment that he could ***only obtain additional copies of the recordings from the Plaintiffs*** according to the terms of the agreement and his actions by way of The Orchard in selling unauthorized digital copies through a multitude of The Orchard's electronic download

---

[2] It is important to note that as of 2000, The Orchard sold only physical media. Sometime after 2000, The Orchard began selling digital copies of Plaintiffs' physical media pursuant to the Media Right / Orchard agreement in which Media Right expressly authorized The Orchard to sell "…by any and all means and media." See Exhibit "E" at page 42, lines 3-13 annexed to the Monaghan Declaration in Support of Plaintiffs' Motion for Summary Judgment.

partners further demonstrates a case for willful infringement.

Defendants have willfully produced digital copies of Plaintiffs' recordings, willfully distributed the digital copies of Plaintiffs' recordings, willfully claimed authorship of Plaintiffs' recordings and willfully claimed copyright of Plaintiffs' recordings, all in clear violation of the Copyright Act (despite visible Copyright notices by Gloryvision on each of the products).

J. **Trademark and Trade Dress Infringement**

Plaintiff Gloryvision, Ltd., is the owner and exclusive first user of the copyrights with respect to the foregoing compositions and musical recordings. Each copy of Songs for Dogs and Songs for Cats prominently displayed the Gloryvision logo and copyright notice. As a result of Plaintiffs' unique and distinctive marks and substantial promotion, sales and advertising including television and the Internet, throughout the United States, of Plaintiffs' recordings, merchandise, and products under the service marks, the marks have developed into strong service marks and have come to indicate to consumers a product or service originating only with Plaintiffs.

Defendants willfully unbundled Plaintiffs product and sold it "piecemeal" for profit while claiming ownership,

21

copyright and authorship of the compositions each of which failed to feature any identification of the Gloryvision, Ltd. marks. Defendants' willful infringement has caused a dilution of the value of Gloryvision's marks and reputation and has caused a great burden on Gloryvision's future sales and business related to producing and distributing sound recordings for profit all while profiteering and promoting Media Right's marks and alleged authorship on the goodwill of talent of Gloryvision, Ellen Bernfeld and Anne Bryant, the Plaintiffs.

### CONCLUSION

For all of these reasons, Plaintiffs respectfully submit that no issues of material fact exist as to the issues of, and request an order finding that (1) Plaintiffs are and at relevant times have been the owners of exclusive rights under United States Copyright law with respect to the sound recordings, associated artwork and text that are at issue in this case and (2) that Defendants are joint and severally liable for copyright infringement of Plaintiffs' sound recordings, associated artwork and text that are at issue in this case. Plaintiffs further request such other relief as the Court deems just and necessary.

Respectfully Submitted,

Michael Korik (MK0377)
Counsel for Plaintiffs
Monaghan, Monaghan, Lamb
& Marchisio, LLP

401 East 65th Street, Ste. 10C
New York, New York 10019
(212) 541-6980
                &
28 West Grand Avenue
Montvale, New Jersey 07645
Tel. (201) 802-9060
Fax. (201) 802-9066

23