UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
ANNE BRYANT, ELLEN BERNFELD, and
GLORYVISION, LTD.                                                    Case No. 07-cv-3050

                                        Plaintiffs,

                                                                    **The Honorable
        - against -                                                  Lisa M. Smith**

EUROPADISK, LTD., MEDIA RIGHT PRODUCTIONS,
INC., VERY COOL MEDIA, INC., DOUGLAS MAXWELL,
THE ORCHARD ENTERPRISES, INC. and RUSSEL .
PALLADINO
                                        Defendants.
-------------------------------------------------------------------------X


**DEFENDANTS' MEMORANDUM OF LAW
IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**


Dated: June 20, 2008


                                        Mitchell C. Shelowitz
                                        Shelowitz & Associates PLLC
                                        11 Penn Plaza, 5th Floor
                                        New York, New York 10001
                                        Tel.: (212) 655-9384

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted in Opposition to the Motion for Summary Judgment brought by Plaintiffs Anne Bryant ("Ms. Bryant"), Ellen Bernfeld ("Ms. Bernfeld"), and Gloryvision, Ltd. ("Gloryvision") (collectively the "Plaintiffs"). The facts in support of this Opposition are set forth in the Memorandum of Law in Support of Defendants' Summary Judgment Motion ("Defendants' Memo"), the Defendants' Local Rule 56.1 Statement of Undisputed Material Facts ("Defendants' Statement"), and the Affidavits of Douglas Maxwell ("Maxwell Affidavit") and Jason Pascal ("Pascal Affidavit"), Vice President and Senior Counsel of The Orchard ("Mr. Pascal"), filed with the Court on June 6, 2008 by Defendants' Media Right Productions, Inc. ("Media Right"), Douglas Maxwell ("Mr. Maxwell"), and The Orchard Enterprises, Inc. ("The Orchard") (collectively the "Defendants").

Relying solely upon Plaintiffs' conclusory statements and unsupported allegations posited throughout the course of this litigation, Plaintiffs cannot prove their case, nor show that Defendants did anything other than perform in good faith under the parties' governing agreements. Indeed, other than citing and reciting the general principles of copyright law and statutory damages, Plaintiffs have not offered a single legal authority to support their claims for relief in this case. In fact, Plaintiffs' moving papers merely restate the same hollow allegations contained in their Complaint. Plaintiffs have not demonstrated that they are entitled to judgment as a matter of law, therefore, their Motion should be denied in its entirety. Moreover, Plaintiffs should be made to pay all of the Defendants' costs and attorneys fees incurred in defending this vexatious lawsuit.

I.    **PLAINTIFFS FAIL TO MEET THEIR BURDEN OF PROOF ON SUMMARY JUDGMENT BECAUSE THEY ARE UNABLE TO PROVE THE ELEMENTS OF THEIR CLAIMS**

The party moving for summary judgment bears the initial burden of demonstrating that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. F.R.C.P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1223 (2d Cir. 1994).

Plaintiffs' Motion fails to establish that Plaintiffs are entitled to judgment as a matter of law by failing to conclusively demonstrate infringement by the Defendants. To the contrary, the Defendants' Motion for Summary Judgment proves that all issues must be resolved in favor of the Defendants, and Plaintiffs' Complaint must be dismissed.

II.   **PLAINTIFFS ARE UNABLE TO CONCLUSIVELY ESTABLISH COPYRIGHT INFRINGEMENT BECAUSE DEFENDANTS WERE AUTHORIZED BY THE GLORYVISION AND THE ORCHARD AGREEMENTS TO SELL THE GLORYVISION RECORDINGS.**

The U.S. Supreme Court has held that "anyone who is authorized by the copyright owner to use the copyrighted work…is not an infringer ...." Sony Corporation of America et al. v. Universal City Studios, Inc., et al., 464 U.S. 417, 433 (1984). In the present case, Media Right was expressly authorized by Plaintiffs under the Product Representation Agreement, attached as Exhibit A of the Declaration of Anne Bryant (the "Gloryvision Agreement"), to market, distribute, and sell Plaintiffs' recordings, "Songs for Cats" and "Songs for Dogs" (the "Gloryvision Recordings"). At or about the time of signing the Gloryvision Agreement, Mr. Maxwell forwarded CDs of the Gloryvision Recordings to The Orchard. Other than this single delivery of CDs to The Orchard, marketing the Gloryvision Recordings on his web site, and utilizing word of mouth attempts at selling the Gloryvision Recordings, Mr. Maxwell did not

copy, transfer, or otherwise sell any versions of the Gloryvision Recordings, whether CDs, digital, or otherwise. Because of the utter lack of interest by the market, Mr. Maxwell had no direct sales of the Gloryvision Recordings.

Pursuant to their distribution agreement with Media Right, attached as Exhibit A of the Monaghan Declaration (the "Orchard Agreement"), The Orchard distributed CD's and digital copies of the Gloryvision Recordings to several online retailers, generating a mere $600 or so in total sales revenues. Following such sales, The Orchard properly forwarded royalties due to Media Right.

Both Defendants therefore did nothing more than comply with the provisions of their agreements and perform their contractual obligations in marketing and selling the Gloryvision Recordings. Thus, Plaintiffs' claim for copyright infringement is simply unsupportable.

A.    MEDIA RIGHT WAS AUTHORIZED TO DISTRIBUTE THE GLORYVISION RECORDINGS TO THE ORCHARD PURSUANT TO THE GLORYVISION AGREEMENT.

The Gloryvision Agreement authorized Media Right to "act as agent and representative" of Gloryvision with respect to the "Gloryvision Recordings" and to "use its best efforts to promote these recordings to catalogues, shopping networks, *internet sites*, retailers, and *wholesalers*." See §§ 2-3 of the Gloryvision Agreement (emphasis added). In fact, the Gloryvision Agreement clearly contemplated that Media Right would utilize its relationships with other distributors to market the Gloryvision Recordings." See § 4 of the Gloryvision Agreement. Plaintiffs admit that they specifically intended Mr. Maxwell to generate sales of the Gloryvision Recordings through "on-line sellers" See Bryant Deposition at ¶¶ 8-13, at p. 49, attached as Exhibit B of the Monaghan Declaration.

Plaintiffs' Motion does not dispute the foregoing, but attempts to argue that the Gloryvision Agreement did not permit Media Right to distribute digital, as opposed to physical copies of the Gloryvision recordings though The Orchard.  However, no such restrictive language is contained in the Gloryvision Agreement, which was entered into prior to the digital music boom initiated by iTunes in 2004.  To the contrary, the Gloryvision Agreement gives broad authority to Media Right with respect to the marketing and sales of the Gloryvision Recordings.  As such, Mr. Maxwell was acting within the confines of the Gloryvision Agreement when he sent the CDs of the Gloryvision Recordings to The Orchard pursuant to The Orchard Agreement.

B.    MEDIA RIGHT CONTINUED TO PERFORM UNDER THE GLORYVISION AGREEMENT, WHICH REMAINED IN EFFECT UNDER THE IMPLIED-IN-FACT CONTRACT DOCTRINE.

Pursuant to the implied-in-fact contract doctrine, when an agreement expires by its terms, if the parties continue to perform as they had prior to the expiration, an implication arises that they have mutually assented to a new contract, containing the same provisions as the old.  See Local Union 813, International Brotherhood of Teamsters v. Waste Management of New York LLC, 469 F.Supp.2d 80, 86 (E.D.N.Y.2007); Capital Medical Systems, Inc. v. Fuji Medical Systems, U.S.A., Inc., 239 A.D.2d 743 (3rd Dep't 1997) (holding that the " business conduct of the parties following the expiration of [their] agreement, which continued in essentially the same manner as it had since the beginning of their relationship, is evidence of an implied-in-fact contract between them").

Plaintiffs' Motion argues that at the time that Media Right distributed the Gloryvision Recordings to The Orchard, the Gloryvision Agreement was no longer in effect due to the three (3) year term provision set forth therein.  However, when a contract expires, and "the parties

continue to act as if they are performing under a contract, the material terms of the prior contract will survive intact unless either one of the parties clearly and manifestly indicates, through words or conduct, that it no longer wishes to continue to be bound ... ." See Luden's Inc. v. Local Union No. 6 of the Bakery, Confectionery, and Tobacco Workers' Int'l Union of America, 28 F.3d 347, at 226 (3d Cir.1994).  Since neither Media Right, nor Gloryvision ever indicated that they no longer wished to be bound by the Gloryvision Agreement and Media Right, by its continued listing of the Gloryvision Recordings on The Orchard and its own web site, continued to perform accordingly, the Gloryvision Agreement remained in full force and effect.

C.     THE ORCHARD'S DISTRIBUTION OF THE GLORYVISION RECORDINGS PURSUANT TO THE ORCHARD AGREEMENT WAS NOT INFRINGING SINCE THE AGREEMENT CONTAINED SPECIFIC REPRESENTATIONS FROM MEDIA RIGHT THAT ITS USE OF THE GLORYVISION RECORDINGS WAS AUTHORIZED.

Insofar as Media Right's marketing and sale of the Gloryvision Recordings were not infringing, there can be no contributory infringement by The Orchard.  Again, Gloryvision contemplated that Media Right would work with third-party distributors, specifically The Orchard, and the Orchard Agreement explicitly authorized The Orchard to "sell, distribute and otherwise exploit" the Gloryvision Recordings.[1]  Moreover, the Orchard Agreement contained the following Media Right representations:

> You warrant and represent that You have the right to grant us (and any person or company named by us) the rights, contained herein, without any liability to us or any other person or company from who the rights are obtained. . . . You warrant that the use of the same by us (and any person or company named by us) will not infringe upon the rights of any nature or any person or company.

---

[1] Plaintiffs' claim that the date of signature of the Gloryvision Agreement followed the date of delivery of the Gloryvision Recordings to The Orchard is irrelevant; all CDs of the Gloryvision Recordings were provided to Media Right by Gloryvision with the clear understanding that they would be sold pursuant to the Gloryvision Agreement.

See the Orchard Agreement §8.  Moreover, upon each sale of the Gloryvision Recordings, The Orchard properly forwarded royalties to Media Right.  As a result, The Orchard cannot be shown to have infringed Plaintiffs' copyrights.

Finally, the allegation by Plaintiffs that third party web sites, namely amazon.com and iTunes, incorrectly attributed certain copyright designations to Defendants is insufficient to support a claim of copyright infringement.  In fact, Defendants have sworn under oath that they have not so authorized such designations and are unaware of how such incorrect attributions arose. See Pascal Affidavit ¶ 24; Maxwell Affidavit ¶ 43.

Because Defendants were authorized by their agreements to sell the Gloryvision Recordings, Plaintiffs' copyright infringement claim must fail.

## II.     PLAINTIFFS HAVE FAILED TO PRESENT PROOF OF OWNERSHIP OF COPYRIGHT REGISTRATIONS WITH RESPECT TO ALL OF THE GLORYVISION RECORDINGS.

Plaintiffs' Motion broadly alleges that Plaintiffs have registered each of Gloryvision Recordings with the U.S. Copyright Office.  However, they have not identified any specific copyrights which have allegedly been infringed, and which, if any, elements of such copyrights have allegedly been infringed by Defendants.  In fact, Plaintiffs have produced proof of only fourteen (14) copyright registrations which _may_ arguably be of relevance: (i) nine (9) Performing Arts registrations of separate songs from "Songs for Cats" only; (ii) three (3) Sound Recording registrations for both albums and four (4) "Songs for Dogs" singles; and (iii) two (2) Visual Arts registrations for CD artwork of the two CDs.  See Exhibit B of the Bryant Declaration.

Because Plaintiffs have not proven ownership under the Copyright Act with respect to multiple copyright registrations, as required on summary judgment, Plaintiffs' Motion, grounded on statutory damages for alleged copyright infringement, must be dismissed.

**III.    DEFENDANTS' CONDUCT WITH RESPECT TO THE GLORYVISION RECORDINGS WAS INNOCENT.**

Media Right believed in good faith that the Gloryvision Agreement was in full force and effect and that it was duly authorized to market and sell the Gloryvision Recordings.  At his deposition, Mr. Maxwell testified that pursuant to the Gloryvision Agreement he believed he was required to use any means at his disposal to promote and sell the Gloryvision Recordings and had discussed The Orchard's involvement during his first conversation with Ms. Bernfeld. <u>See</u> Maxwell Deposition at ¶¶ 5-25, p. 78; Maxwell Affidavit at ¶¶40, 41, 43.  As is clear from his testimony, Mr. Maxwell never intended to infringe the Plaintiffs' copyrights and has never represented to anyone that he was the owner, author, or copyright holder of any of the Gloryvision Recordings. <u>See id</u>.  Similarly, The Orchard believed, based upon the express language in the Orchard Agreement, that it was fully authorized to market and sell the Gloryvision Recordings in any format whatsoever. <u>See</u> Pascal Affidavit at ¶¶10-11.  Because Defendants' acted in good faith, Plaintiffs have no basis to support a claim that Defendants intended to infringe any copyrights.

Plaintiffs' Motion makes a groundless accusation that Defendants "willfully claimed copyright of Plaintiff's recordings…in…violation if the Copyright Act."  The only purported proof of this clearly false allegation is a couple of screen shots from third-party websites which apparently mistakenly designated Defendants as the artist and/or music label. <u>See</u> Exhibits C, D, and E of the Bryant Declaration.  Defendants however have, from the commencement of this action, maintained that they "never took any action, nor instructed anyone to affix such an incorrect copyright attribution on any such third-party websites…[and] do not know who made such wrongful attribution or why." <u>See</u> Pascal Affidavit ¶ 24; <u>see also</u>, Maxwell Affidavit ¶ 43.

## IV.    PLAINTIFFS DO NOT HOLD A SINGLE TRADEMARK REGISTRATION WITH RESPECT TO THE GLORYVISION RECORDINGS.

In order to prevail on a trademark infringement claim, a plaintiff must establish that: (1) it has a valid mark that is entitled to protection under the Lanham Act; (2) the defendant used the mark, (i) in commerce, (ii) "in connection with the sale . . . or advertising of goods or services," 15 U.S.C. § 1114(1)(a); and (iii) without the Plaintiffs' consent.  See 1-800 Contacts, Inc. v. WhenU.com, Inc., 414 F.3d 400, 406-407 (2d Cir. 2005).  Plaintiffs' trademark infringement claims must fail because the Plaintiffs' cannot identify any trademark, whether registered or unregistered, that was allegedly infringed.  At her deposition, Plaintiff Anne Bryant was unable to identify a single trademark owned by Gloryvision, and in response to the question "Have you ever applied for a federal trademark for anything ever?" Ms. Bryant responded: "No."  See Bryant Deposition at ¶¶ 6-10, p. 54.

Similarly, in their moving papers, Plaintiffs still cannot identify with specificity any protectable trademarks, therefore they certainly cannot prevail on their claim of trademark infringement on summary judgment.

## V.    PLAINTIFFS SHOULD BE REQUIRED TO COVER DEFENDANTS' EXPENSES IN DEFENDING THIS OBJECTIVELY UNREASONABLE SUIT.

This is a case about $331.06, which had inadvertently and mistakenly been unpaid by Mr. Maxwell to the Plaintiffs.  After recognizing his oversight, Mr. Maxwell offered to compensate Plaintiffs sums which differentially exceed this amount, all of which were irrationally turned down by the Plaintiffs, forcing Defendants to incur substantial costs for its defense.

There is an avalanche of legal support for the award of attorney's fees and costs to Defendants in this case.  In one particularly compelling case, Baker v. Urban Outfitters, 431 F. Supp 2d 351 (S.D.N.Y. 2006), the defendant inadvertently infringed Plaintiffs' copyright.  Much

like Mr. Maxwell, the defendant in <u>Baker</u> apologized for the mistake and repeatedly offered settlements in amounts more than twice what the defendant received for the inadvertent infringement.   In fact, as the court explained, the plaintiff "refused the offer out of hand, insisting instead that he was entitled to more than a million dollars." <u>Id</u>. at 357.

Finding the case to fly in the face of the objectives of the Copyright Act, the <u>Baker</u> court stated that the plaintiff and his counsel were merely motivated "to extract a significant payment from perceived 'deep pocketed' Defendant," and awarded the defendant *$454,184.00* in attorney's fees and costs. <u>See</u> <u>id</u>. at 358.

In the current case, the Gloryvision Agreement authorized Defendants to sell Plaintiffs' recordings, and thus no claim of infringement can be maintained.   Nevertheless, even if the facts are stretched to support a claim of infringement, any such infringement was unintentional, and damages minimal.   Moreover, Defendants have offered to pay ten (10) times the actual amount due to the Plaintiffs.  <u>See</u> Defendants' December 4, 2007 Letter to Plaintiffs' counsel, provided in Defendants' Exhibit 4 to its Summary Judgment Motion.   Because Plaintiffs nonetheless unscrupulously continued with their objectively unreasonable lawsuit, forcing Defendants to expend thousands for its legal defense, Plaintiffs should be required to reimburse all of Defendants' associated fees and costs.

<u>**CONCLUSION**</u>

For all of the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment should

be denied in its entirety and Plaintiffs should be required to pay all of the Defendants' attorney's

fees and costs incurred in its defense.

Dated:  New York, NY
    June 20, 2008

             Respectfully submitted,

             SHELOWITZ & ASSOCIATES PLLC
             *Attorneys for Defendants*

             By: /s/ MITCHELL C. SHELOWITZ
               Mitchell C. Shelowitz
               11 Penn Plaza, 5th Floor
               New York, NY 10001
               Tel:  (212) 655-9384
               Fax:  (646) 328-4569