UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
ANNE BRYANT, ELLEN BERNFELD, and
GLORYVISION, LTD.                                                              Case No. 07-cv-3050

                                        Plaintiffs,            **The Honorable
                                                               Lisa M. Smith**

        - against -

EUROPADISK, LTD., MEDIA RIGHT PRODUCTIONS,
INC., VERY COOL MEDIA, INC., DOUGLASS
MAXWELL, THE ORCHARD ENTERPRISES, INC.,
and RUSSELL J. PALLADINO
                                        Defendants.
-------------------------------------------------------------------------X


### DEFENDANTS' MEMORANDUM OF LAW
### IN SUPPORT OF
### SUMMARY JUDGMENT


June 6, 2008

                        SHELOWITZ & ASSOCIATES PLLC
                        *Attorneys for Defendants*
                        Mitchell C. Shelowitz
                        11 Penn Plaza, 5th Floor
                        New York, NY 10001
                        Tel:    (212) 655-9384
                        Fax:    (646) 328-4569

## TABLE OF CONTENTS

Table of Authorities………………………………………………………………4

Preliminary Statement……………………………………………………………6

Statement of Procedural History…………………………………………………7

Statement of Facts……………………………………………………………......7

    A.  *The Gloryvision Agreement…………………………………………..….............7*

    B.  *Media Right's Marketing of the Gloryvision Recordings……………………….....9*

    C.                                                                                    *S*

        *ales of the Gloryvision Recording Were Meager…………………………………9*

    D.  *Defendants' Revenues from the Gloryvision Recordings……………………………10*

    E.  *Plaintiffs' Copyrights………………………………………..……………11*

Argument………………………………………………………………………..12

**I.**       **SUMMARY JUDGMENT STANDARD**………………………………….....12

**II.**     **PLAINTIFFS' COPYRIGHT INFRINGEMENT CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFFS WERE AUTHORIZED TO SELL THE GLORYVISION RECORDINGS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

    A.  *No Infringement by Media Right or The Orchard……………………………………12*

    B.  *No Contributory Infringement by The Orchard……………………………………...14*

**III.**   **EVEN IF THE COURT SHOULD FIND THAT THE GLORYVISION AGREEMENT DID NOT AUTHORIZE DEFENDANT'S SALE OF THE GLORYVISION RECORDINGS, DEFENDANT'S LACKED ANY INTENTO TO INFRINGE AND PLAINTIFFS HAVE NO DAMAGES** …………………………15

    A. No Intent to Infringe……………………………………………………...…..……..15

    B.  *No Damages to Plaintiffs, Nor Gain to Defendants…………………………………..16*

    C.  *The Number of Works Infringed is the Standard……………………………............17*

**IV.**   **PLAINTIFFS DO NOT OWN A SINGLE VALID TRADEMARK**………………18

**V.** **PLAINTIFFS FAIL TO ESTABLISH BREACH OF FIFUCIARY DUTY AND UNJUST ENRICHMENT**……………………………………………………..18

**VI.** **BECAUSE PLAINTIFFS' COPYRIGHT INFRINGEMENT CLAIMS ARE OBJECTIVELY UNREASONABLE, DEFENDANTS ARE ENTITLED TO ATTORNEY'S FEES AND COSTS UNDER THE COPYRIGHT ACT**…………19

Conclusion………………………………………………………………………..21

## **TABLE OF AUTHORITIES**

### Case Law

*Nabisco v. Warner-Lambert Co.*, 32 F.Supp.2d 690, 694 (S.D.N.Y. 1999)…………………..12

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986)…………………………12

*Sony Corporation of America et al. v. Universal City Studios, Inc., et al.*,
 464 U.S. 417, 433; 104 S. Ct. 774, 784 (1984)…………………………………………………..14

*Brought to Life Music, Inc. v. MCA Records*, 2003 U.S. Dist. LEXIS 1967 (S.D.N.Y. 2003)..14

*Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162
(2d Cir. 1971)…………………………………………………………………………………..14

*Tips Exports, Inc. v. Music Mahal, Inc.*, 2007 WL 952036 * 6 (E.D.N.Y. 2007)………….15,16

*NFL v. Primetime 24 Joint Venture*, 131 F. Supp. 2d (S.D.N.Y. 2001)………………………..16

*WB Music Corp. v. RTV Communication Group, Inc.*, 445 F.3d 538, 540 (2d Cir. 2006)……..17

*Luden's Inc. v. Local Union No. 6 of the Bakery, Confectionery, and Tobacco Workers' Int'l
Union of America*, 28 F.3d 347, at 226 (3d Cir.1994)………………………………………17,20

*Interscope Records et al. v. Owusu*, No. 05-0102, slip op. at 3 n. 3, 2007 WL 2343676 (N.D.N.Y.
2007)…………………………………………………………………………………………18

*1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400, 406-407 (2d Cir. 2005)……………..18

*RCN Telecom Services, Inc. v. 202 Centre Street Realty LLC*, 2005 U.S. App. LEXIS 24869
(2d Cir. 2005)………………………………………………………………………………...18

*Local Union 813, International Brotherhood of Teamsters v. Waste Management of New York
LLC*, 469 F.Supp.2d 80, 86 (E.D.N.Y.2007)………………………………………………………19

*Capital Medical Systems, Inc. v. Fuji Medical Systems, U.S.A., Inc.*, 239 A.D.2d 743 (3rd Dep't
1997)………………………………………………………………………………………..19

*Henneberry v. Sumitomo Corp. of Am.*, 2007 U.S. Dist. LEXIS 50633 * 77 (S.D.N.Y 2007)….20

*Whitman Realty Group, Inc. v. Tony Galano*, 2007 NY Slip Op 5266; 41 A.D.3d 590; 838
N.Y.S.2d 585; 2007 N.Y. App. Div. LEXIS 7485 (App. Div. 2d Dep't 2007)…………………20

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)………………………………………………21

_Chivalry Film et al v. NBC Universal_, 2007 U.S. Dist. Lexis 86889 *4-5, 7 (S.D.N.Y. 2007)...21

_Ernst Haas Studio, Inc., v. Palm Press, Inc._, 2005 U.S. Dist. LEXIS 3417 (S.D.N.Y. 2005)…..21

_Arclightz and Films Pvt, et al. v. Video Palace,_ 2003 U.S. Dist Lexis 19086 *18. (S.D.N.Y. 2003)………………………………………………………………………………….21

_Baker v. Urban Outfitters_, 431 F. Supp 2d 351(S.D.N.Y. 2006),………………………….21

<u>Statutes</u>

17 U.S.C. § 504(a)……………………………………………………………………15

17 U.S.C. 504(c)(1)………………………………………………………………..17

15 U.S.C. § 1114(1)(a)……………………………………………………………18

17 U.S.C. § 50……………………………………………………………………..21

§ 43(a)(1) Lanham Act……………………………………………………………22

**PRELIMINARY STATEMENT**

Defendants Media Right Productions, Inc. ("Media Right"), Douglas Maxwell ("Mr. Maxwell"), and The Orchard Enterprises, Inc. ("The Orchard") (collectively the "Defendants") hereby move for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("F.R.C.P."): (i) dismissing Plaintiffs' Complaint filed on April 16, 2007; and (ii) awarding Defendants all attorneys fees and costs incurred in the defense of this baseless litigation.

This is a simple contract case with less than $400 in actual damages that is wrongly dressed in a cloak of intellectual property infringement.   While Plaintiffs' ticket into federal court rests upon causes of action sounding in copyright and trademark infringement of Plaintiffs' music, these claims are completely undermined by two elements: (1) the existence of a written agreements authorizing Defendants to market and sell Plaintiffs' music; and (2) the lack of any actual damages.  In Defendants' view, this case provides a classic example of abuse of the federal judicial process.

As the undisputed facts establish, Plaintiffs are unable to provide sufficient proof in order to meet their burden of supporting a verdict in their favor. First, Defendants were authorized to market and sell Plaintiffs' recordings and thus, any infringement claim is unfounded.  Second, even if the Court determines that Defendants were not authorized to market and sell Plaintiffs' music, (i) any unauthorized use was innocent, unintentional, and not willful; and (ii) Plaintiffs have not suffered any actual damages as a result of any such use.

**PROCEDURAL HISTORY**

This action was commenced by Plaintiffs on or about April 16, 2007. On or about August 20, 2007, Defendants Europadisk, Ltd., Very Cool Media, Inc., and Russell J. Palladino, were removed from this action by Stipulation.

Defendants served their answer and affirmative defenses upon Plaintiffs on or about October 30, 2007. On December 5, 2007, the parties participated in a court ordered mediation, which was unsuccessful. On or about December 21, 2008, Defendants presented Plaintiffs' counsel with an F.R.C. P. Rule 68 Offer of Judgment in the amount of $3,000.00. Plaintiffs did not accept such offer of judgment.

On January 21, 2008, Plaintiffs conducted the deposition of Douglas Maxwell, and on February 21, 2008, Plaintiffs conducted the deposition of Jason Pascal, Vice President and Senior Counsel of The Orchard.

On February 13, 2008, Defendants conducted telephone depositions of Plaintiffs Ellen Bernfeld and Ann Bryant who were in Florida. Discovery has concluded.

**STATEMENT OF FACTS**

The facts of this matter are further set forth in Defendants' Local Rule 56.1 Statement of Undisputed Facts, the Affidavits of Mr. Maxwell and Mr. Jason Pascal, Defendants' Exhibits in support of Summary Judgment, and this Memorandum of Law.

**A. *The Gloryvision Agreement***

This case has its origin in a music representation agreement (the "Gloryvision Agreement,"), between Plaintiff, Gloryvision, Ltd. ("Gloryvision") and Media Right, entered into in February of 2000.  The Gloryvision Agreement was prepared and signed by Mr. Maxwell

and Plaintiff Ellen Bernfeld. *See* Maxwell Deposition at ¶¶ 2-5, p. 76; t ¶¶ 8-10, p. 77,  included as Defendants' Exhibit 10; and Bernfeld's Deposition at  ¶¶ 20-23, p. 92 ,  included as Defendants' Exhibit 12. The Gloryvision Agreement authorized Media Right to "act as agent and representative" of Gloryvision with respect to Gloryvision's recordings entitled "Songs for Dogs" and "Songs for Cats" (the "<u>Gloryvision Recordings</u>") and to "use its best efforts to promote these recordings to catalogues, shopping networks, *internet sites*, retailers, and *wholesalers*." *See* §§ 2-3 of the Gloryvision Agreement (emphasis added).

Mr. Maxwell testified that the term "internet sites" in the Gloryvision Agreement was included in reference to the parties' conversations regarding their collective excitement to distribute the Gloryvision Recordings through The Orchard. *See* Maxwell Deposition at  ¶¶ 18-25, p. 102, while the term "wholesalers"  confirms that they contemplated Media Right's reselling to third-parties, such as The Orchard. In terms of consideration, Media Right was entitled to a 20% commission on all sales on the Gloryvision Recordings, with 80% to be forwarded to Gloryvision. *See* § 4 of the Gloryvision Agreement.

The Gloryvision Agreement clearly contemplated that Media Right would utilize its relationships with other distributors to market the Gloryvision Recordings, providing that "[i]n the event that Media Right Productions elects to use its relationships with other third party distributors for the purpose of marketing these products, Media Right Productions will be entitled to twenty percent of the gross sales after any commissions are paid to the third party." *See* § 4 of the Gloryvision Agreement.  Again, Gloryvision specifically wanted Mr. Maxwell to generate sales of the Gloryvision Recordings through "on-line sellers" and Mr. Maxwell had a reasonable understanding grounded in the Gloryvision Agreement that he was required to "use any means at [his] disposal to generate income from the sale of the recordings." *See* Anne

Bryant's February 13, 2008 Deposition Transcript at ¶¶ 8-13, at p. 49, included as Defendants'

Exhibit13; *See* Maxwell Deposition Transcript at ¶¶ 10-13, 19-21, at p. 78.

Pursuant to the Gloryvision Agreement, Gloryvision forwarded to Media Right a box of

approximately 40-50 CDs containing the Gloryvision Recordings, comprised of approximately

20-25 CDs entitled "Songs for Cats" and another approximately 20- 25 CDs entitled "Songs for

Dogs." *See* Maxwell Deposition at ¶ 16, at p. 95.  Although the Gloryvision Agreement

references a "Songs for Dogs CD and Book" package (the "Gloryvision Gift Set"), Media Right,

never received any units of the Gloryvision Gift Set. *See* Maxwell Affidavit at ¶ 20.

### B.  *Media Right's Marketing of the Gloryvision Recordings*

Media Right sought to directly market the Gloryvision Recordings by reaching out to pet-

related retailers, such as Pets.com, by direct marketing, and by posting marketing materials for

the Gloryvision Recordings on the Media Right web site. *See* Maxwell Affidavit at ¶21.  Media

Right also placed the Gloryvision Recordings, together with nine (9) Media Right CDs (the

"Media Right Recordings"), for distribution and sale with The Orchard in 2000. *See* Maxwell

Deposition ¶¶ 18-19, p. 125.[1]

### C.  *Sales of the Gloryvision Recordings Were Meager*

Despite investing time and money in the marketing of the Gloryvision Recordings, the

market showed little interest, and Media Right had no direct sales of any Gloryvision

Recordings. *See* Maxwell Affidavit at ¶ 22.  Plaintiffs' experience was similar.  In fact,

Gloryvision's sales revenues from the Gloryvision Recordings in 2000-2001 were under $500.

---

[1] While the Orchard Agreement and the Gloryvision Agreement were signed approximately three (3) weeks apart, Plaintiffs' attempt to create an issue because the  date of signature of the Gloryvision Agreement followed the date of delivery of the Gloryvision Recordings to The Orchard is simply a distraction.   The Gloryvision Recordings were provided to Media Right by Gloryvision with the clear understanding that they would be sold pursuant to the Gloryvision Agreement. See Maxwell Deposition at ¶16, p. 95.

*See* Bryant Deposition at ¶¶ 17-20, p. 20. royalties from radio plays of the Gloryvision Recordings between 1994 and 1997 were around $1,000. *See* Bryant Deposition at ¶¶ 15-16, p.69; and Plaintiffs' sales revenues after 2001 were virtually non-existent. *See* Bryant Deposition ¶¶ 3-4, p.19. While Media Right's active marketing efforts of the Gloryvision Recordings subsided due to lack of interest, Media Right maintained the Gloryvision Recordings with The Orchard, and continued to post the marketing materials for the Gloryvision Recordings on the Media Right web site with the hope of facilitating sales of the Gloryvision Recordings. *See* Maxwell Affidavit at ¶ 22.

### D.  Defendants' Revenues from the Gloryvision Recordings

From April 1, 2002 until April 8, 2008, The Orchard generated a meager $2.26 in revenues from CD sales of "Songs for Cats" and $9.88 in CD sales from "Songs for Dogs." *See* Pascal Affidavit at ¶ 19. Media Right's share under the Orchard Agreement was $1.58 and $7.00, respectively.  Id.   In terms of digital sales for the same period, The Orchard generated $195.40 in total revenues from downloads of "Songs for Cats" and $383.51 from "Songs for Dogs." Media Right's share under the Orchard Agreement amounted to $136.78 and $268.46, respectively.  *See* Pascal Affidavit at ¶ 20.

Although Media Right received royalty checks from The Orchard over the years, the amounts were insignificant, and Mr. Maxwell was unaware that these small checks contained royalties allotted to the Gloryvision Recordings because no written royalty breakdown accompanied the checks. *See* Maxwell Affidavit at ¶34; Pascal Affidavit at ¶ 15.  Thus Media Right mistakenly believed that all royalties were due from the Media Right Recordings. *See* Maxwell Affidavit at  ¶ 34.  In total, unbeknownst to Mr. Maxwell, Media Right apparently

received $413.82 in sales revenues generated from the Gloryvision Recordings, and unintentionally neglected to forward $331.06 of those revenues to Gloryvision. *See* <u>Exhibit C</u>.

While the Gloryvision Agreement provides for a term of three (3) years, no notice of termination or expiration was sent by Plaintiffs'. *See* Bryant Deposition at ¶¶17-22, p.52. Similarly, no notice of termination or expiration was sent by Media Right and The Orchard therefore continued to perform under the Gloryvision Agreement under the good faith assumption and belief that it was still in effect until being served with the complaint in this action.  Plaintiffs admit that after they discovered that the Gloryvision Recordings were being sold and distributed over the Internet, they did not conduct any investigations prior to filing the instant lawsuit. *See* Bryant Deposition at ¶¶ 24-25, p. 67 of the Bryant Deposition; and *See* Bernfeld Deposition at ¶¶ 25, p. 96 and Bernfeld Deposition at ¶¶ 1-3, 10-12, p. 97.  In fact, even though the Plaintiffs had no information or proof whatsoever implicating Mr. Maxwell, at her deposition, Ms. Bryant testified that she never attempted to contact Mr. Maxwell prior to commencing litigation. *See* Bryant Deposition at ¶¶ 24-25, p. 67.

### E.   *Plaintiffs' Copyrights*

Plaintiffs complaint broadly alleges that Gloryvision is the owner of the copyrights with respect to the Gloryvision Recordings though they have not specifically identified any specific copyrights, which have allegedly been infringed, and which elements of such copyrights have been allegedly infringed by Defendants.  Plaintiffs have produced proof of only fourteen (14) copyright registrations which may arguably be of relevance: (i) nine (9) Performing Arts registrations of separate songs from "Songs for Cats" only; (ii) three (3) Sound Recording registrations for both albums and four (4) "Songs for Dogs" singles; and (iii) two (2) Visual Arts registrations for CD artwork of the two CDs.

## ARGUMENT

### I.     SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *Nabisco v. Warner-Lambert Co.*, 32 F.Supp.2d 690, 694 (S.D.N.Y. 1999).  It is well settled that summary judgment must be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548 (1986).

In the case at bar, as further, explained below, Plaintiffs are unable to establish the basic elements of copyright and trademark infringement. As such, summary judgment dismissing this case, together with an award of costs and attorneys fees to Defendants is appropriate.

### II.     PLAINTIFFS' COPYRIGHT INFRINGEMENT CLAIMS MUST BE DISMISSED BECAUSE PLAINTIFFS WERE AUTHORIZED TO SELL THE GLORYVISION RECORDINGS

#### A.     No Infringement by Media Right or The Orchard

A claim of copyright infringement requires a showing that the defendant infringed copyrights owned by another. After changing their theory of the case multiple times, Plaintiffs are now implying infringement from the following: (1) pursuant to the Orchard Agreement, The Orchard has distributed the Gloryvision Recordings digitally; and (2) the Gloryvision Recordings have allegedly appeared on several *third-party* websites which Defendants do not control, with a © or ℗ mark, thus incorrectly attributing certain rights in the Gloryvision Recordings to the Defendants.

As the U.S. Supreme Court has eloquently stated, "anyone who is authorized by the copyright owner to use the copyrighted work in a way specified in the [Copyright] statute . . .  is

not an infringer of the copyright with respect to such use." *See Sony Corporation of America et al. v. Universal City Studios, Inc., et al*., 464 U.S. 417, 433; 104 S. Ct. 774, 784 (1984).   In the present case, Media Right was expressly authorized under the Gloryvision Agreement to distribute the Gloryvision Recordings.  Pursuant to the Gloryvision Agreement, Media Right authorized The Orchard in the Orchard Agreement to market and sell the Gloryvision Recordings.  Thus a claim for copyright infringement is simply unsupportable.

While Plaintiffs may argue that the Gloryvision Agreement was no longer in effect due to the three (3) year term provision set forth therein, the doctrine of implied-in-fact agreements solidly undermines such an argument.  Pursuant to this doctrine, when an agreement expires by its terms, if the parties continue to perform as they had prior to the expiration, an implication arises that they have mutually assented to a new contract, containing the same provisions as the old.  *See Local Union 813, International Brotherhood of Teamsters v. Waste Management of New York LLC,* 469 F.Supp.2d 80, 86 (E.D.N.Y.2007); *Capital Medical Systems, Inc. v. Fuji Medical Systems, U.S.A., Inc.*, 239 A.D.2d 743 (3rd Dep't 1997) (holding that the " business conduct of the parties following the expiration of [their] agreement, which continued in essentially the same manner as it had since the beginning of their relationship, is evidence of an implied-in-fact contract between them").

In fact, when a contract expires, and "the parties continue to act as if they are performing under a contract, the material terms of the prior contract will survive intact unless either one of the parties clearly and manifestly indicates, through words or conduct, that it no longer wishes to continue to be bound ... ." *See Luden's Inc. v. Local Union No. 6 of the Bakery, Confectionery, and Tobacco Workers' Int'l Union of America*, 28 F.3d 347, at 226 (3d Cir.1994).

13

Neither Media Right, nor Gloryvision ever indicated to the other that they no longer wished to be bound by the Gloryvision Agreement, and Media Right, by its continued listing of the Gloryvision Recordings on The Orchard's and its own web site, continued to perform accordingly.

Moreover, the allegation by Plaintiffs that a third party web site incorrectly attributed certain copyright designations to Defendants is insufficient to support a claim of copyright infringement. This is particularly compelling where Defendants have sworn under oath that they have not so authorized such designation and are unaware of how such incorrect attributions arose.

**B.    No Contributory Infringement by The Orchard**

Plaintiffs appear to allege a claim of contributory copyright infringement against The Orchard.   To succeed on a claim for contributory copyright infringement, "a plaintiff must allege that the defendant 'with knowledge of the infringing activity, induced, caused, or materially contributed to the infringing conduct of another.'" *See Brought to Life Music, Inc. v. MCA Records*, 2003 U.S. Dist. LEXIS 1967 (S.D.N.Y. 2003), *citing Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971).

Insofar as the marketing and sale of the Gloryvision Recordings were not infringing, there can be no contributory infringement by The Orchard.  Moreover, Gloryvision contemplated that Media Right would work with third-party distributors, specifically the Orchard, and the Orchard Agreement explicitly authorized The Orchard to "sell, distribute and otherwise exploit" the Gloryvision Recordings.  Critically undermining the Plaintiffs' claims, the Orchard Agreement contained the following Media Right representations:

> You warrant and represent that You have the right to grant us (and any person or company named by us) the rights, contained herein, without any liability to us or

14

any other person or company from who the rights are obtained. . . . You warrant that the use of the same by us (and any person or company named by us) will not infringe upon the rights of any nature or any person or company.

*See* the Orchard Agreement §8.

Even assuming an infringement by Media Right, The Orchard had no knowledge of any possible infringing activity – and received written assurances from Media Right that the use of the Gloryvision Recordings was permitted.  Therefore, Plaintiffs' claim of contributory infringement must be dismissed.

### III. EVEN IF THE COURT SHOULD FIND THAT THE GLORYVISION AGREEMENT DID NOT AUTHORIZE DEFENDANTS' SALE AND MARKETING OF THE GLORYVISION RECORDINGS, DEFENDANTS LACKED ANY INTENT TO INFRINGE AND PLAINTIFFS HAVE NO DAMAGES

#### A. *No Intent to Infringe*

Where, as here, an infringer is "not aware and ha[s] no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200." *See Tips Exports, Inc. v. Music Mahal, Inc.*, 2007 WL 952036 * 6 (E.D.N.Y. 2007).

A key factor in determining the appropriate statutory damage award is "the infringers' state of mind whether willful, knowing or merely innocent." *See NFL v. Primetime 24 Joint Venture*, 131 F. Supp. 2d (S.D.N.Y. 2001).  Media Right believed in good faith that the Gloryvision Agreement was in full force and effect and that it was duly authorized to market and sell the Gloryvision Recordings.  Even if it is determined that the Gloryvision Agreement was no longer in force, Mr. Maxwell's good faith belief that he was acting pursuant to the Gloryvision Agreement undermines any award of damages to Plaintiffs in excess of the payment due under the Gloryvision Agreement.

15

At his deposition, Mr. Maxwell testified that he believed he was required to use any means at his disposal to promote and sell the Gloryvision Recordings and had discussed The Orchard's involvement from his first conversation with Ms. Bernfeld. *See* Maxwell Deposition at ¶¶ 5-25, p. 78; Maxwell Affidavit at ¶¶40, 41, 43..  Mr. Maxwell's understanding of the Gloryvision Agreement is reasonable in light of Section 3 of the Gloryvision Agreement, which specifically provides that "Media Rights Productions will use its best efforts to market and promote these recordings to…internet sites."  As is clear from his testimony, Mr. Maxwell never intended to infringe the Plaintiffs' copyrights and has never represented to anyone that he was the owner, author, or copyright holder of any of the Gloryvision Recordings. *See* id.  Similarly, The Orchard believed based upon the express language of the Orchard Agreement that it was fully authorized to market and sell the Gloryvision Recordings in any format whatsoever. *See* Pascal Affidavit at ¶¶10-11.

Additionally, in determining the amount of statutory damages, courts will consider factors like "the expenses saved and profits reaped by the infringer's actions, the revenues lost by plaintiff, and the deterrent effect on others beside the defendant, as well as the specific deterrent effect on the Defendants themselves."  *See, Tips Exports, Inc. v. Music Mahal, Inc*., 2007 WL 952036 * 6 (E.D.N.Y.)  With gross sales to Media Right of a paltry $413.82 and virtually no sales by Plaintiffs of the Gloryvision Recordings, there was minimal revenue lost, if any, and no meaningful profit was reaped by any of the Defendants.

  B.  ***No Damage to Plaintiffs, Nor Gain to Defendants***

Even assuming the occurrence of an unintentional copyright infringement by the Defendants -- which Defendants do not concede -- Plaintiffs have not been harmed in any financial way and the Defendants have not benefitted in any significant way.  At the copyright

owner's election, an infringer of a copyright is liable for either the owner's actual damages, including any lost profits, or statutory damages. *See* 17 U.S.C. § 504(a).  Because they were unable to prove any actual damages, Plaintiffs have elected in this case to rely solely on statutory damages under the Copyright Act. *See* Defendants' Exhibit 5.

### C.  *The Number of Works Infringed is the Standard.*

Contrary to Plaintiffs' assertions throughout the litigation that the number of digital downloads is the appropriate focus of the statutory damages calculation, the precedent is overwhelming that  "[i]n calculating statutory damages, the focus is on the number of works infringed, not the number of copies or the number of acts of infringement .  .  . Thus, for example, a musical composition constitutes a single work for purposes of assessing damages, regardless of how many different ways it may be copied." *Id.*

The number of infringements is irrelevant. *See* 17 U.S.C. 504(c)(1) (stating that only a single set of statutory damages is applicable to "all infringements involved in the action with respect to any one work,"); H. Rep., p. 162 (confirming that this is so, "no matter how many acts of infringement are involved in the action and regardless of whether the acts were separate, isolated, or occurred in a related series"). *See also WB Music Corp. v. RTV Communication Group, Inc.*, 445 F.3d 538, 540 (2d Cir. 2006) (Second Circuit held that "the total number of awards of statutory damages that a plaintiff may recover in any given action depends on the number of works that are infringed and the number of individually liable infringers, regardless of the number of infringements of those works."); *Interscope Records et al. v. Owusu*, No. 05-0102, slip op. at 3 n. 3, 2007 WL 2343676 (N.D.N.Y. 2007) (awarding statutory damages based on the number of sound recordings infringed).  Thus, Plaintiffs' repeated allegations that the number of downloads is the benchmark in assessing statutory damages is bereft of legal support.

Thus, even if the Court would find the existence of an innocent infringement, the number of works infringed would be limited to 14 at best.

### IV.    PLAINTIFFS DO NOT OWN A SINGLE VALID TRADEMARK

In order to prevail on a trademark infringement claim, a plaintiff must establish that: (1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (i) in commerce, (ii) "in connection with the sale . . . or advertising of goods or services," 15 U.S.C. § 1114(1)(a), and (iii) without the Plaintiffs' consent. *See 1-800 Contacts, Inc. v. WhenU.com, Inc.,* 414 F.3d 400, 406-407 (2d Cir. 2005). Plaintiffs' trademark infringement claims must fail because the Plaintiffs cannot identify any trademark, whether registered or unregistered, that was allegedly infringed. Moreover, at her deposition, Plaintiff Anne Bryant was unable to identify a single trademark owned by Gloryvision. In fact, in response to the question "Have you ever applied for a federal trademark for anything ever?" Ms. Bryant responded: "No." *See* Bryant Deposition at ¶¶ 6-10, p. 54.

### V.    PLAINTIFFS FAIL TO ESTABLISH BREACH OF FIDUCIARY DUTY AND UNJUST ENRICHMENT.

Plaintiffs' claims for breach of fiduciary duty and unjust enrichment are similarly misplaced. Generally, commercial transactions do not create fiduciary obligations. *See Henneberry v. Sumitomo Corp. of Am.*, 2007 U.S. Dist. LEXIS 50633 * 77 (S.D.N.Y 2007). Here, the parties had merely a couple of telephone conversations prior to entering into the Gloryvision Agreement, and have not spoken since the execution if the Gloryvision Agreement until the commencement of Plaintiffs' lawsuit. *See* Bernfeld Deposition at ¶¶ 11-16, p. 95. Such dealings, or rather lack thereof, cannot possibly create a fiduciary relationship.

Furthermore, in order "[t]o prevail on a claim of unjust enrichment, a plaintiff must establish that the defendant benefitted at the Plaintiffs' expense and that equity and good

18

conscience require restitution . . . . Recovery for unjust enrichment is barred by a valid and

enforceable contract." *See Whitman Realty Group, Inc. v. Tony Galano*, 2007 NY Slip Op 5266;

41 A.D.3d 590; 838 N.Y.S.2d 585; 2007 N.Y. App. Div. LEXIS 7485 (App. Div. 2d Dep't

2007).  Plaintiffs are unable to meet either burden.

### VI.   BECAUSE PLAINTIFFS' COPYRIGHT INFRINGEMENT CLAIMS ARE OBJECTIVELY UNREASONABLE, DEFENDANTS ARE ENTITLED TO ATTORNEY'S FEES AND COSTS UNDER THE COPYRIGHT ACT.

Although actual damages to the Plaintiffs are less than $500, Plaintiffs are seeking the

exorbitant amount of $1,000,000 in their Complaint.   As originally held by the Supreme Court

in *Fogerty v. Fantasy, Inc*., 510 U.S. 517, 534 (1994), under *§ 505* of *The Copyright Act of 1976*,

17 U.S.C. § 50, and as followed in the courts in the Second Circuit, if a copyright claim is

"clearly without merit or otherwise patently devoid of legal or factual basis, the claim ought to

be deemed objectively unreasonable and an award of attorneys fees and costs is proper." *See

Chivalry Film et al v. NBC Universal*., 2007 U.S. Dist. Lexis 86889 *4-5, 7 (S.D.N.Y. 2007)

(internal quotations omitted); *see also Ernst Haas Studio, Inc., v. Palm Press, Inc.,* 2005 U.S.

Dist. LEXIS 3417 (S.D.N.Y. 2005);  *Arclightz and Films Pvt, et al. v. Video Palace*, 2003 U.S.

Dist Lexis 19086 *18. (S.D.N.Y. 2003).

There is an avalanche of legal support for the award of attorney's fees and costs to

Defendants in this case.  In one particularly relevant case, *Baker v. Urban Outfitters*, 431 F. Supp

2d 351(S.D.N.Y. 2006), the defendant inadvertently infringed Plaintiffs' copyright.  The

defendant apologized for the mistake and repeatedly offered settlements in amounts more than

twice what the defendant received for the inadvertent infringement.   In fact, as the court

explained, the plaintiff "refused the offer out of hand, insisting instead that he was entitled to

more than a million dollars." *Id.* at 357.

Finding the case to fly in the face of the objectives of the Copyright Act, the Court stated that the plaintiff was not motivated to file and maintain this lawsuit to recover Defendants' profits or any fair and reasonable multiple thereof.  Finding that the plaintiff and his counsel were motivated "to extract a significant payment from perceived 'deep pocketed' Defendants," the Southern District Court in Baker awarded defendant ***$454,184.00*** in attorney's fees and costs payable by plaintiff and its counsel. *See id.* at 358.

In the current case, the Gloryvision Agreement authorized Defendants to sell Plaintiffs' recordings, and thus no claim of infringement can be proved.  Nevertheless, even if the facts are stretched to support a claim of infringement, any such infringement was unintentional, the damages were minimal, and Defendants have offered to pay ten (10) times the actual amount due to Plaintiffs.  *See* Defendants' December 4, 2007 Letter to Plaintiffs' counsel, provided in Defendants' Exhibit 4.

.

## <u>CONCLUSION</u>

Due to the foregoing and for the reasons stated herein, Defendants respectfully requests that Plaintiffs' Complaint be dismissed in whole or in part its entirety as follows, and that Defendants be awarded all attorneys fees and costs incurred in defending this litigation:

A.  Plaintiffs' First Count against the Defendants for alleged trademark/ service mark infringement; and/or

B.  Plaintiffs' Second Count against the Defendants for alleged common law trade dress infringement and unfair competition; and/or

C.  Plaintiffs' Third Count against the Defendants for alleged violation of Plaintiffs' trade dress under Section 43(a)(1) of the Lanham Act; and/or

D.  Plaintiffs' Fourth Count against the Defendants jointly and severally for alleged direct copyright infringement; and/or

E.  Plaintiffs' Fifth Count against the Defendants jointly and severally for alleged contributory copyright infringement; and/or

F.  Plaintiffs' Sixth Count against the Defendants for an alleged breach of contract and an accounting; and/or

G.  Plaintiffs' Seventh Count against the Defendants for an alleged breach of fiduciary duty;  and/or

H.  Plaintiffs' Eighth Count against the Defendants for alleged unjust enrichment; and/or

I.  Granting Defendant's such other and further relief, including all cost and attorneys fees, as this Court deems just and proper.

Dated:  New York, NY
       June 6, 2008

Respectfully submitted,

SHELOWITZ & ASSOCIATES PLLC
*Attorneys for Defendants*

By: /s/ MITCHELL C. SHELOWITZ
     Mitchell C. Shelowitz
     11 Penn Plaza, 5th Floor
     New York, NY 10001
     Tel:    (212) 655-9384
     Fax:   (646) 328-4569